UNITED STATES, Appellee

v

RICHARD L. ENLOE, Airman Basic,
U. S. Air Force, Appellant

15 USCMA 256, 35 CMR 228

No. 17,993

February 26, 1965

*Lieutenant Colonel Joseph B. McMullin* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman*.

*Lieutenant Colonel Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

FERGUSON, Judge:

This case comes before us on the issue of the validity of an Air Force directive prohibiting private pretrial interviews by defense counsel of agents of the Office of Special Investigations, promulgated—according to the United States on oral argument—because of the tendency of defense attorneys to misrepresent agents' pretrial statements during trial proceedings. We hold the directive—insofar █ as it applies to military justice proceedings—to be invalid as inconsistent with the Uniform Code of Military Justice and the Manual for Courts-Martial, United States, 1951, and an unwarranted restriction on the right of defense counsel to meet the charges against the accused.

The record reveals that the accused was charged separately with possession and use of marihuana, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. A pretrial investigation was commenced on September 30, 1963, resulting in a recommendation, on October 18, 1963, that the accused be tried by general court-martial. At the investigation, Enloe was represented by certified defense counsel, who afterwards appeared at the trial as appointed defense counsel for a co-accused. Various agents of the Office of Special Investigations appeared as witnesses for the United States and testified both as to evidence obtained against the accused as a result of searching his effects and his interrogation as a suspect. In addition, the sworn statements of numerous witnesses had been obtained by the agents and were utilized in the investigation as evidence.

On December 3, 1963, charges against the accused were referred for trial by the Commander, Seventeenth Air Force.

On December 17, 1963, accused successfully sought appointment of counsel other than the officer who represented him at the pretrial investigation. On the same day, his original attorney made a written request of the Office of Special Investigations, through the trial counsel, for personal interviews of named agents in connection with the accused's case, "without the presence of a representative of the US Government." In reply, he was informed that the "agents listed in basic letter will be made available for interview by Defense Counsel, however, OSI Directives require that another OSI representative be present during all interviews." On December 18, 1963, newly appointed counsel for the accused orally repeated the same request and was informed by the senior OSI officer present that the same condition would apply to him, namely, that any interview of the agents would have to take place in the presence of a representative of his office.

Trial commenced on December 19, 1963. Upon the presentation of Agent Sherrow as a witness for the prosecution, defense counsel entered an objection and, in an out-of-court hearing, moved to prevent the receipt of Sherrow's testimony and that of the other agents on the basis of denial of his entitlement to a private pretrial interview with the witnesses, or, in the alternative, for an order directing "these witnesses to appear for pretrial inquiry by counsel en [sic] camera with no agents or any other parties present." The law officer overruled defense objections to the appearance of the agents and denied the motion for their private interview. He did so on the basis that the directive in question was a proper exercise of the Government's regulatory authority.

The directive in question provides as follows:

**257**

"DEPARTMENT OF THE AIR FORCE HEAD-
QUARTERS UNITED STATES AIR FORCE
Washington, D. C., 20333
OSI COMD LTR

OSI COMMAND LETTER
NR 16

3 December 1963
SUBJECT: Agent Relationship With
Defense Counsel

TO: OSI Dist 70 (Col. John F.
O'Connell)

TO BE OPENED BY ADDRESSEE ONLY

"1. My policy regarding the subject is that we may permit appointed defense counsels or personally chosen civilian defense counsel to interview our special agents prior to trial, Article 32 investigations or administrative board proceedings convened under appropriate Air Force Regulations. However, there are certain limitations to this permission. Any request for such interview must go through the local Judge Advocate to the District Commander. If possible, the appointed trial counsel should be present during the interview. In no instance will the agent being interviewed be unaccompanied. The District Commander, or a senior, experienced OSI agent will be with him at all stages of the interview.

"2. Since there is no legal requirement, as yet, that we consent to such an interview, the agent or District Commander may terminate it when he desires or refuse to answer any questions he deems irrelevant or harassing. I further authorize District Commanders to deny these requests if, in their judgment, the interview will result in a 'fishing expedition' or embarrassment to the agent or OSI.

"3. While our policy is one of reasonable cooperation with defense counsels, we shall neither solicit such requests nor shall we intimate that a request of this nature will be honored. We will continue to conduct impartial and unbiased investigations and cooperate with all involved to the best of our ability and judgment. I wish to point out that the foregoing is applicable only to 'out-of-court' interviews and does not alter. in any way our current instruction regarding the appearance and conduct of our agents during 'in-court' proceedings.

/s/ John S. Samuel
JOHN S. SAMUEL
Brigadier General, U. S. Air Force
Director of Special Investigations
The Inspector General"

In recent years, it has been the tendency of the courts to move away from earlier, more rigid concepts of "gamesmanship," which did little more than to furnish the accused with a copy of the indictment against him and possible endorsement thereon of the so-called *res gestae* witnesses, toward permitting him access, either personally or through counsel, to the witnesses against him. Cf. Jencks v United States, 353 US 657, 1 L ed 2d 1103, 77 S Ct 1007 (1957); 18 USC § 3500. In this area, military law has been preeminent, jealously guaranteeing to the accused the right to be effectively represented by counsel through affording every opportunity to prepare his case by openly disclosing the Government's evidence. United States v Heinel, 9 USCMA 259, 26 CMR 39; United States v Franchia, 13 USCMA 315, 32 CMR 315.

When Congress was considering the enactment of the Uniform Code of Military Justice and the guaranty for the first time of the appointment of legally qualified defense counsel to represent accused in all general courts-martial, it was made aware of the intent to provide in the military a broader right of discovery than was generally available to civilian defendants, together with the right—subsequently expressly embodied in the Code—to have equal opportunity with the trial counsel "to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 997, 1057; Code, supra, Article 46, 10 USC § 846; United States v Sweeney, 14 USCMA 599, 34 CMR 379; United States v Aycock, 15 USCMA 158, 35 CMR 130. Not only did it thereafter expressly authorize the President to promulgate regulations governing

the obtention of witnesses and other evidence, see Code, supra, Article 46, it also provided generally for his publication of rules of procedure and evidence to govern trials by courts-martial. Code, supra, Article 36, 10 USC § 836. Where such rules are not contrary to or inconsistent with the Code, we have pointed out that they have the force and effect of statutes. United States v Smith, 13 USCMA 105, 32 CMR 105.

Following the enactment of the Code, the President published such rules of procedure and evidence in the Manual for Courts-Martial, 1951, supra. With regard to the issue now before us, he provided that "any act [on the part of the prosecution] . . . inconsistent with a genuine desire to have the whole truth revealed is prohibited." The Manual, supra, further declares, "Ample opportunity will be given the accused and his counsel to prepare the defense, including opportunities to interview each other and *any other person*." (Emphasis supplied.) Manual, supra, paragraphs 44*q*, 48*q*. As to such interviews, the following principle was expressly laid down:

> "*c*. Interviewing witnesses.— Counsel may properly interview any witness or prospective witness for the opposing side in any case *without the consent of opposing counsel or the accused*. See 44*h* as to relations between the prosecution and the accused. In interviewing a witness, counsel should scrupulously avoid any suggestion calculated to induce the witness to suppress or deviate from the truth when appearing as a witness at the trial." [Manual, supra, paragraph 42*c*.] [Emphasis supplied.]

In United States v Aycock, supra, we had occasion to consider the efficacy of a specific order that the accused not contact named witnesses for the Government with respect to the charges against him. In holding such order illegal and unenforceable, we reached that conclusion on the basis of command interference with the preparation of accused's defense, declaring, at page 160:

> "An accused and his counsel are entitled to ample opportunity to prepare his defense, 'including opportunities to interview each other and any other person.' Manual for Courts-Martial, United States, 1951, paragraph 48*q*. An order which prohibits such contacts with the witnesses against him is unlawful. While the Air Force 'is clearly authorized to issue orders . . . , it may not perversely use this authority' to hamper an accused in military justice proceedings. United States v Acfalle, 12 USCMA 465, 31 CMR 51, at page 469; 23 CJS, Criminal Law, § 958. The applicable principle has been well stated by many authorities."

The Government concedes the validity of these concepts and, while characterizing the directive as perhaps unwise, urges it does not deny the accused or his counsel their undoubted right to pretrial interviews with all prospective witnesses. Rather, it claims that the command letter seeks to do no more than lawfully to impose a reasonable condition of having a third party present at such sessions in order to protect the credibility of the Government's witnesses against later attack at the trial by unscrupulous defense counsel, who would urge the agent gave a different version of relevant events to him prior to the trial. The argument is faulty and misses the point of the Manual provisions.

First, the President has expressly provided that the consent of the opposing side need not be obtained in order to interview its witnesses. Manual, supra, paragraph 42*c*. Yet, the entire directive is cast in terms of granting permission to interview agents who are to be witnesses for the Government and makes a condition of such grant of consent the presence of the trial counsel, the OSI commander, or a senior agent. But how can such permission be required or conditions attached to its grant, when the Manual, with the full force of the basic enactment of Congress behind it, has eliminated the need for such consent? The answer is obvious, *i. e.*, that the directive is directly in conflict with the Manual provision regarding this phase of pre-

trial discovery and must, therefore, fall of its own weight. But that is not the only consideration.

In United States v Sweeney, supra, we pointed out that Congress, in the Code, expressly provided for equal opportunity between the Government and the accused in the procuring of witnesses and other evidence. Code, supra, Article 46. The directive here, however, imposes regulatory conditions only on defense counsel and throws only in his path the obstacle of having third parties present during the pretrial interview of agents who will ostensibly appear on behalf of the United States. And this requirement, we are informed by the Government, rests upon the allegation that it is the practice of Air Force defense counsel falsely at trial to represent that agents' testimony is different from that communicated in pretrial interviews. We have not been aware of any noticeable number of such incidents in the thousands of records which have been filed with this Court, nor do we believe that such an unethical practice is prevalent among defense counsel in general or those in the Air Force in particular. We are offered no support for the proposition, nor do we believe it necessary to condemn or subject to strictures the whole membership of a bar because of the alleged misbehavior of some individuals. As we noted of a similar argument in United States v Aycock, supra:

". . . In any event, a wide range of prophylactic measures is available in the armed services to protect the judicial process, and there is clearly no basis in law or need for adding the force of such a broad and unrestricted order to its armory."

In like manner, we reject the argument of the United States that agents of the Office of Special Investigations are its witnesses, and it is entitled to participate in any interview of them which is conducted by the defense counsel. United States v Aycock, supra. As was said in State v Papa, 32 RI 453, 80 Atl 12 (1911), at page 15:

". . . Witnesses are not parties, and should not be partisans. They do not belong to either side of the controversy. They may be summoned by one or the other or both, but are not retained by either. It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence applicable to the case to use or not as might be deemed most advantageous. . . .

"The defendant, therefore, has the constitutional right to have compulsory process for obtaining witnesses to testify in his behalf. He has also the right, either personally or by attorney, to ascertain what their testimony will be."

Finally, the great weight of authority in this country sustains the contention of counsel for the accused that, absent special circumstances, the right to a pretrial interview—guaranteed to him under the Manual, supra, and the Code —encompasses the right to an interview free from insistence by the Government upon the presence of its representative.

Thus, in State v Berstein, 372 SW2d 57 (Missouri) (1963), reversal was ordered for failure to permit a pretrial interview of a material prosecution witness, the court declaring, at page 60:

"No Missouri case has been cited to this court by either party, and we have found none, directly deciding the right of a defendant in a criminal case, by his counsel, to interview prospective material witnesses for the State who are incarcerated at the time the interview is requested. The better view, in cases from other jurisdictions, under the circumstances which are here present, is that defendant has such a right, and to deny the same to him is an abuse of discretion amounting to error. See Annotation, 124 ALR 454.

• • • • •

*"In order to avoid coercion or intimidation of the witness for the prosecution, and so as not to hamper the defendant's counsel, the interview with the witness should be conducted out of the presence of the prosecutor and with as much privacy as is consistent with reasonable security*

260

*measures. . . ."* [Emphasis supplied.]

And, similarly, in Gallman v State, 29 Ala App 264, 195 So 768 (1940), the court stated, at page 770:

"If the defendant had the right to confer with the witness, Jordan, at all, he had the right to such conference in the absence of any intimidating influences whatsoever. The defendant, himself, had no right to the information of the witness except that which he, voluntarily and fairly, was willing to give. If counsel for the defendant abuses his right in obtaining the true and voluntary statement of a witness with reference to the facts deemed relevant upon the trial of the case then such counsel is amenable to the statutes of this State prohibiting the bribery, or intimidation, of witnesses and other specified improper conduct in connection therewith. *It is therefore the opinion and judgment of this court that the trial court committed reversible error and abused its discretion in imposing upon defendant the right to confer with the witness upon the sole condition that the State's solicitors be present at such conference."* [Emphasis supplied.]

In Bobo v Commonwealth, 187 Va 774, 48 SE2d 213 (1948), the Virginia Supreme Court of Appeals likewise struck down the defendant's conviction for refusal to permit a private pretrial interview with a witness, saying, at page 215:

". . . The attorney for the accused has no right to be present when the attorney for the Commonwealth interviews such a witness, and likewise, it would seem that the attorney for the Commonwealth has no such right when the witness is interviewed by counsel for the accused.

"In Virginia we have no case on this subject. Elsewhere the weight of authority seems to be that the accused should be accorded the right to interview material witnesses . . . , in the absence of the prosecuting attorney. The cases are collected in an annotation in 124 ALR at page 454.

. . . . .

". . . Under section 8, article 1, of the Virginia Constitution, *an accused has the unqualified right to 'call for evidence in his favor'. This includes the right to prepare for trial which, in turn, includes the right to interview material witnesses and to ascertain the truth. This fundamental right cannot be accorded the accused if he is hampered in his interview of his material witnesses by a prohibitory order of the court which refuses to grant him a private interview. The constitutional provision is not satisfied by a public interview."* [Emphasis supplied.]

Finally, we refer to the language utilized by the court in State v Susan, 152 Wash 365, 278 Pac 149 (1929), at page 152:

". . . Certainly if a witness . . . can only be interviewed in the presence of the prosecuting attorney, the door is open to grave abuses which in our opinion are not contemplated by the necessary law, which provides that persons deemed by the state to be material witnesses on its behalf may be detained unless reasonable security for their presence at the trial is provided. . . ."

See also State v Papa, supra; State v Gaines, 144 Wash 446, 258 Pac 508 (1927); People v Cordero, 72 Cal App 526, 237 Pac 786 (1925); Mackie v State, 138 Miss 740, 103 So 379 (1925); Wisniewski v State, 1 Storey (51 Del) 84, 138 A2d 333 (1957); and Leahy v State, 111 Tex Crim 570, 13 SW2d 874 (1928).

Nor are we here concerned with a situation in which the circumstances are such as to demand the presence of a third party at the interview, in order to protect a special interest of either the State or the witness, as, for example, where the witness is a juvenile and the presence of a juvenile officer is required. Baker v State, 47 So 2d 728 (1950), and Holladay v State, 130 Tex Crim 588, 95 SW2d 118 (1936), or a prosecutrix confined in a state mental institution, State v Storrs, 112 Wash 675, 192 Pac 984 (1920). Moreover, we are not confronted with the problem whether any court or officer has the authority to

**261**

compel any witness, as an individual, to submit to a pretrial interview by either side or to attach such conditions to the granting of that interview as he sees fit. Cf. Wilkerson v State, 57 SW 956 (Tex) (1899); Withers v State, 23 Tex App 396, 5 SW 121 (1887); Leahy v State, supra; State v Wallack, 193 Iowa 941, 188 NW 131 (1922); Dicks v United States, 253 F2d 713 (CA 5th Cir) (1958). The question before us is simply whether the Government may, unilaterally and quite without regard to any particularized considerations, issue a blanket prohibition against all interviews of all agents of the Office of Special Investigations except in the presence of designated third parties. No authority has been called to our attention which sustains such a sweeping claim of power to insulate probable witnesses for the prosecution against pretrial defense examination of their projected testimony. Cf. Byrnes v United States, 327 F2d 825 (CA 9th Cir) (1964). To the contrary, as indicated by the authorities cited above, courts have been reluctant to deny the right to a private, pretrial interview even in specific cases and have chosen to leave the purported dangers of such interviews to be governed by the ordinary strictures imposable in the event of counsel's misconduct. Cf. United States v Aycock, supra; Gallman v State, supra.

We, too, are compelled to conclude that, in light of the provisions of the Manual and the Code regarding equality of access to witnesses and evidence and the lack of need for the consent of opposing counsel to pretrial interviews of witnesses, it is beyond the authority of the United States to interpose itself between the witness and the defense counsel and require, as a condition of granting such interviews, that a third party be present. Manual, supra, paragraphs 42, 44; Code, supra, Article 46; United States v Sweeney, United States v Aycock, both supra. Moreover, we point out that this regulation is so phrased as not to leave in doubt its intention to hamper disclosure to defense counsel of prospective testimony, for it directs the termination of a pretrial interview at any time the agent or

the District Commander deems that questions are irrelevant, harassing, or amount to a "fishing expedition." As the usual purpose of out-of-court interviews is to determine the substance of the witness' knowledge concerning the incidents charged, it is necessarily a "fishing expedition" and frequently will involve matter later found to be irrelevant. And we do not doubt that questions concerning the manner in which a confession was obtained or a search conducted may, though relevant and material, be frequently considered by an agent to be harassing and embarrassing. Yet, by force of its directive, the Government seeks to cut off defense access to the witness on these bases. We venture the guess that it is the success of these "fishing expeditions," rather than the protection of mature, experienced police officers, which led to its promulgation. See United States v Kauffman, 14 USCMA 283, 34 CMR 63. Whatever the motivation behind it, we repeat our injunction that, while "the Air Force 'is clearly authorized to issue orders . . . , it may not perversely use this authority' to hamper an accused in military justice proceedings." United States v Aycock, supra, at page 160.

Finally, the Government argues that, assuming the invalidity of the order, there was no prejudice to the accused. We point out that the testimony of the agents dealt with the accused's pretrial statement and the conduct of a search and seizure of his belongings. Their interview was an important part of his counsel's pretrial preparation and, as such, involved his right to be represented by counsel. United States v Tellier, 13 USCMA 323, 32 CMR 323. We decline to speculate as to what the results of such interviews of these important witnesses would have been, absent the restriction thereon sought to be imposed by the Government. Bobo v Commonwealth, supra; Gallman v State, supra. Prejudice, therefore, is apparent on the face of the record, and reversal must be had.

As this is a matter of first impression before the Court, we deem it appro-

priate to offer guidance to the law officer at any rehearing which ■■■■■■ ■ may be had. Thus, while neither the accused, his counsel, nor the court may be able to compel a witness to submit to a private interview, or not to attach such conditions to the matter as he, the witness, deems appropriate, see Dicks v United States, Wilkerson v State, and Withers v State, all supra, it is clearly open to the court to advise the witness that the directive here involved is a nullity, that he stands relieved of any obligation to abide by its terms, and that his persistence in obedience to its directions will bar receipt of his testimony. In this connection, we invite attention to the procedure followed by the learned District Judge, as set forth in Byrnes v United States, supra, at page 832.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

This appeal presents the question of whether the accused was deprived of due process of law because he was denied the right to interview, before trial, agents of the Office of Special Investigations "unchaperoned" by either trial counsel or a senior agent.

Several members of the 686th Air Force Band, stationed at Weisbaden, Germany, were suspected of using marihuana. Among them was the accused. An investigation was initiated by the OSI. Special Agent Donald D. Sherrow obtained authority from the wing commander to search the quarters of the suspected bandsmen. A search was made of the accused's room. The next day the accused gave Agent Herbert L. Hall a written statement in which he admitted smoking marihuana at various times between the Spring of 1963 and August 1963.

Charges of use and possession of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, were filed against the accused on September 25, 1963. Similar charges were brought against Airman Dominic A. Lombardi, Jr. Both groups of charges were referred to Captain Bernard A. Waxstein, Jr., for investigation under the provision of Article 32' of the Uniform Code, supra, 10 USC § 832. At the investigation, Lombardi and the accused were represented by Captain Thomas M. French, a lawyer certified in accordance with Article 27 (b) of the Uniform Code, supra, 10 USC § 827. Captain French was requested as counsel by each accused. Sworn testimony was received from several agents who participated in the OSI investigation; and the testimony of other agents was expressly waived by defense counsel. At the end of the hearing, the investigating officer recommended that Lombardi and the accused be tried in common by general court-martial. The same recommendation was made by the staff judge advocate to the convening authority. These recommendations were followed by the convening authority.

The cases came on before a general court-martial on December 19.[1] Lombardi was still represented by Captain French; the accused, however, was represented by Captain James E. Applegate, a qualified lawyer who had been appointed defense counsel in place of Captain French on December 17. Special Agent Sherrow was the Government's first witness. When his testimony reached the point of his application to the wing commander for authority to search the quarters of the members of the band suspected of marihuana use, Captain Applegate objected "to any further testimony." He contended the accused had "been deprived of the effective assistance of counsel" because, before trial, he had been denied a private interview with the "OSI agent witnesses." Captain French made the same objection on behalf of Lombardi.

---

1. Enloe was acquitted of the wrongful possession charge, but convicted of the wrongful use of marihuana offense, and sentenced to a bad-conduct discharge, confinement at hard labor for six months, and partial forfeitures for a like period.

The law officer held an out-of-court hearing on the objections.

At the hearing it appeared that on December 17, Captain French, acting as defense counsel for both the accused and Lombardi, submitted a request to examine Sherrow, Hall, and four other agents "without the presence of a representative of the US Government."[2] On the same day, the OSI District Office, in response to the request, advised Captain French that the agents would be "available for interview," but OSI directives required that "another OSI representative be present during all interviews." Apparently, Captain French was unwilling to accept the condition of another agent's presence. The next day, Captain Applegate was appointed defense counsel for the accused. He informally inquired of the OSI District Office whether he would be allowed an unchaperoned interview if he renewed the request. He was informed that if he made the request he would receive the same answer Captain French had received. He, too, declined to interview the witnesses before trial in the presence of another agent. Nevertheless, Captain Applegate argued at trial that the refusal of a private interview with the agents was an "unbearable" police tactic, and a "basic . . . infringement" on the right of the accused to prepare for trial.

The directive upon which the local OSI relied in imposing the condition that another agent be present at the interview requested by defense counsel was promulgated by the Director of Special Investigations, Department of the Air Force. It was titled "Agent Relationship With Defense Counsel" and was issued as an OSI Command Letter on December 3, 1963. The letter is quoted in full in the principal opinion. In pertinent part, it referred to a "policy" to allow defense counsel, military or civilian, to interview special agents prior to formal courts-martial proceedings, such as the Article 32 investigation or the trial itself, and proceedings before administrative boards.

The general policy of broad cooperation was, however, qualified by a direction that in "no instance will the agent being interviewed be unaccompanied." The letter provided that appointed trial counsel would be present "[i]f possible" and that "at all stages of the interview" the district commander or a senior, experienced agent would be with the agent being interviewed. It further conferred upon the district commander authority to deny a request to interview an agent, if he deemed the interview would be merely a " 'fishing expedition' " or result in embarrassment to the agent or agency. The letter concluded with the reminder that the OSI would "continue to conduct impartial and unbiased investigations and cooperate with all involved" to the best of its ability and judgment.

The right of an accused to interview, privately, before trial, a prospective witness for the Government is an old and troublesome subject. Over the years it has engaged the attention of many courts; and conflicting decisions are recorded in the reports. See Hagan, "Interviewing Witnesses in Criminal Cases," 28 Brooklyn Law Review 207 (1962). Both parties here recognize the conflicting positions that have been taken on the subject. Appellate defense counsel contend the "better opinion" is that the interview must be private. Oppositely, in one of the briefs filed on the issue, Government counsel insist that the "overwhelming weight of authority" sanctions the attendance of a third person at the interview. See Wigmore, Evidence, 3d ed, § 1850, footnote 9, at page 397. The majority accepts the accused's contention. I disagree.

This Court has dealt previously with the general problem of communicating with witnesses before trial. We have indicated that if there were "good old days" sentiments which considered it unethical, or even criminal, for a defense lawyer to talk to the prosecution's witnesses, those sentiments had no place in modern military practice. United States v Parker, 6 USCMA 75, 19 CMR

2. Trial counsel represented that to his knowledge Captain French had in fact examined Agent Sherrow on at least two occasions without "any chaperon." Captain French admitted the interviews, but maintained they dealt with other persons whom he was representing in the same investigation.

264

201. See also Pulich, "Discovery in Criminal Cases: Procedures and Their Elements," Criminal Law Seminar, 93, 98 (1961). Some months ago we decided United States v Aycock, 15 USCMA 158, 159, 35 CMR 130. There, the accused had been ordered by his company commander " 'not to contact' " designated persons " 'about any matters' " concerning charges then pending against him. We held the order was illegal because it deprived the accused of the opportunity to interview prospective witnesses in preparation for trial of the charges against him. Our conclusion, we observed, was consistent with substantial civilian opinion to the effect that the Government cannot impede or deprive an accused of the opportunity to interview prospective witnesses. The reason for the rule appears most directly in a question formulated by the Supreme Court of Delaware, as follows: "Of what avail is the defendant's right to use compulsory process for the attendance of a witness [a constitutional guarantee] if the defendant may not discuss with a witness in advance, the facts within the witness' knowledge?" Wisniewski v State, 1 Storey (51 Del) 84, 138 A2d 333, 338 (1957).

Information as to the probable testimony of a witness may be gleaned from a number of sources; but the most direct and generally reliable source is the witness himself. Reasonably, therefore, the pretrial interview with a prospective witness is important to effective realization of the right to "compulsory process for obtaining witnesses" in the accused's favor. Constitution of the United States, Amendment VI. Until the full substance of the witness' knowledge of the relevant facts is ascertained, it cannot safely be concluded that the witness will be in "favor" of, or "against," the accused. Also, the Constitution, Amendment VI, requires that the accused be "confronted with the witnesses against him." Every experienced trial lawyer knows that sound cross-examination rests upon the bedrock of pretrial preparation. While it may be unnecessary in some cases, and economically or physically impossible in others, effective preparation for trial includes the interview of all prospective witnesses, whether denominated Government, defense, or nonparty. An interview, however, need not be private to fulfill its purpose.

At trial, defense counsel conceded that in "certain cases," it "probably" was appropriate for a third person to be present at an interview between a probable witness for the Government and defense counsel. See People v Mason, 301 Ill 370, 133 NE 767 (1921); Abbott, Criminal Trial Practice (4th ed, Viesselman rev), § 259a (1939). Indeed, in the case of a young child or a person of limited intelligence, a third person's presence might safeguard against confusion or encourage the witness to speak. See Holladay v State, 130 Tex Crim 591, 95 SW2d 119 (1936). If it be conceded that a third person's presence is legal and reasonable in some instances, then the point of our inquiry would seem to be narrowed to whether it was reasonable for a third person to be present at the requested interviews in this case. However, in view of the broader base of the appellate challenge, I pass over the trial concession to consider the problem for what it really is, namely, a matter of pretrial discovery of the testimony of a prospective adverse witness.

Ideally, a witness belongs to neither side. State v Papa, 32 RI 453, 80 Atl 12 (1911); Kardy v Shook, 237 Md 524, 207 A2d 83 (February 15, 1965). But practically, and in the case of a retained expert witness, perhaps actually (see Boynton v R. J. Reynolds Tobacco Co., 36 F Supp 593 (D Mass) (1941)), a witness expected to testify voluntarily for one party is that party's witness. In fact, once the witness takes the stand he is so identified with the party calling him that he cannot, under ordinary circumstances, be impeached by that party. Manual for Courts-Martial, United States, 1951, paragraph 153b, at page 290; United States v Reid, 8 USCMA 4, 23 CMR 228. In the usual case, no difficulty is encountered in interviewing privately one's own witness. It may reasonably be anticipated, however, that a potentially adverse witness or a potentially favorable but reluctant witness,

**265**

may not want to talk unless he is compelled by legal process.

A prospective witness can refuse to be interviewed, privately or otherwise, by either the Government or the accused. Byrnes v United States, 327 F2d 825, 832 (CA 9th Cir) (1964); Kardy v Shook, supra. He cannot be compelled to speak to anyone, whether it be to a law enforcement agent, to Government counsel, or to the accused and his counsel, except when summoned, in proper form, before an officer or a tribunal empowered by law to require him to testify. Blackmer v United States, 284 US 421, 76 L ed 375, 52 S Ct 252, 255 (1932); Shotkin v Nelson, 146 F2d 402 (CA 10th Cir) (1944); United States v Chin Lim Mow, 12 FRD 433 (SD Cal) (1952); see also Article 135, Uniform Code, supra, 10 USC § 935. Appellate defense counsel concede these rights to the witness,[3] but contend the witness should decide for himself whether he wants to be interviewed, and if he does, whether he will allow the interview only on condition that some named third person be present. See Byrnes v United States, supra. They say the contention is supported by the Manual for Courts-Martial provision that "[c]ounsel may properly interview any witness or prospective witness for the opposing side in any case without the consent of opposing counsel." Manual for Courts-Martial, supra, paragraph 42c.

From what I have said earlier, it is apparent that the Manual provision does not establish a rule for the military different from that prevailing in American courts generally. The Manual merely restates the rule that counsel can talk to potentially adverse witnesses without the consent of opposing counsel. See United States v Parker, supra, at page 87. To say that the consent of opposing counsel is not a condition precedent to the interview does not mean opposing counsel must be barred from the interview.

Modern practice emphasizes pretrial disclosure of the probable facts. In

criminal cases, the Government has been compelled to disclose more of its case than has the accused. In military practice, the names and addresses of Government witnesses must be endorsed on the charge sheet, and a copy thereof must be given to the accused. See Manual for Courts-Martial, supra, paragraphs 29, 44h, and Appendix 5. When charges are investigated under the provisions of Article 32, the accused is entitled to confront and cross-examine the available witnesses against him, and to examine the statement of every Government witness. Ibid., paragraphs 33i and 44h. No similar obligations are imposed upon the accused as to his prospective witnesses; nor is he required to disclose in advance of trial whether he intends to rely upon an affirmative defense, such as alibi or insanity. I do not regard these advantages as justifying secrecy in an area that has no sanction in law or logic.

Appellate defense counsel have advanced many reasons to indicate that the presence of neither trial counsel nor a senior OSI agent is necessary to protect confidential military information or other legitimate interests of the Government. The directive may indeed be unnecessary, but a lack of essentiality does not establish illegality or unreasonableness.

It will be recalled that at the time the interview was requested, the agents engaged in the investigation had already testified in person at the Article 32 investigation or had submitted sworn summaries of the substance of their probable testimony. Had the defense only been concerned about possible uncertainties in their testimony and had it only desired to clarify those points, a wholly public interview would have served its purpose as well as a private one. Yet both of the accused's lawyers declined to interview the agents other than privately. Part of defense counsel's argument at trial suggests that, in requesting the interview, he was not so much interested in additional information as he was in the hope that he might create a situation which he could use against these agents if they testified for the Government. Thus, he said:

"... I think ... [the law

---

3. I need not decide whether these rights are qualified by special needs of the military service.

officer] has tried enough law suits to know that when a witness gets on the stand and on cross-examination you—you wouldn't see me would you —this at least gives the impression of secrecy and furtiveness on the part of the witness. I think . . . this directive is attempting . . . to give the OSI its cake and let them eat it too. They will never be accused on cross-examination in the courtroom in front of the triers of the fact of being secretive or furtive, but they will never be able to be crossed up because if possible the trial—the appointed trial counsel should be present."

Avoidance of the risk referred to by defense counsel is surely a legitimate, rather than an illaudable, objective. Other reasonable objectives come readily to mind. For example, if the agent is to be taken from his assigned task during regular duty hours to be interviewed by defense counsel, it is not unreasonable to provide some means to have the interview proceed expeditiously and along lines not patently irrelevant to the particular accused. Also, while even an inexperienced OSI agent who has participated in "working up" the case against the accused might perhaps not need special protection, in an interview with skilled defense counsel, who would naturally regard him as a hostile witness, it is not unreasonable for the agency to attempt to safeguard against confusion or misunderstanding. In any event, assuming the validity of the defense argument, that, on balance, the directive is unnecessary, unwise, and unfairly one-sided, the unavoidable fact is that the directive preserves the right to interview an agent. And, I am not persuaded that the presence of a third person would ineluctably lead the agent either to remain silent, or to falsify his testimony, to avoid possible recrimination by his superiors. Cf. United States v Crawford, 15 USCMA 31, 40, 35 CMR 3.

The judiciary has consistently recognized the right of an administrative agency to make reasonable regulations regarding the use of its own records, reports, and employees. Such regulations will not be allowed to interfere with, or impede, the administration of justice, but to the extent they can be given effect, without injury to a substantial right of the litigant, they are respected by the courts. Boske v Comingore, 177 US 459, 44 L ed 846, 20 S Ct 701 (1900); Universal Airline v Eastern Air Lines, 188 F2d 993, 999 (CA DC Cir) (1951).

We are dealing here with a purely preliminary matter. It is important to the judicial process, but it is not part of it. Also, we must not lose sight of the fact that even if the private interview is denied, the accused is not without relief as to other means of discovery. Congress has provided adequate measures to compel disclosure of the witness' knowledge of the matters relative to the case. Unlike the situation in the civilian community, where the defense does not usually have available the witness' testimony before the grand jury, or the defense is otherwise limited in ascertaining before trial the substance of the prospective witness' testimony, in the military, the accused has other means at his disposal to obtain the information. If there is an Article 32 investigation, he is entitled not only to previous statements made by the witness, but he can call the witness for personal examination. At any time after the charges have been signed, and without regard to personal wishes of the witness, the accused may "for good cause" take the oral or written deposition of the witness. Article 49, Uniform Code of Military Justice, 10 USC § 849. Cf. Article of War 25, 10 USC (1946 ed) § 1496; Rule 15, Federal Rules of Criminal Procedure. On these occasions, trial counsel may be present. Why then should his presence at an informal interview with the witness be deemed reprehensible? I see nothing in his presence, or in the presence of another person, at the informal interview which can possibly prejudice the defense in the preparation of its case.

Principle aside, I see no basis from which to conclude that the accused was prejudiced by the lack of an "unchaperoned" interview with the OSI agents. He knew all they knew about the case; and all they would probably testify to if called as witnesses. He

**267**

had available the sworn testimony at the Article 32 investigation of some; and sworn statements of the substance of the proposed testimony of the others. He has not suggested a single avenue of inquiry not covered by these statements. I have already pointed out that the right to request a private interview with a witness is not a constitutional right; yet the principal opinion appears to accord it greater dignity and protection than a constitutional right, for a deprivation thereof does not entitle an accused to reversal of an otherwise valid conviction, if there is no possible risk of harm. See United States v Simpson, 15 USCMA 18, 22, 34 CMR 464.

Under the circumstances disclosed by the record of trial, in my opinion, the OSI directive defining the conditions of a defense interview with its agents did not deprive the accused of due process of law. I would affirm the decision of the board of review.