UNITED STATES, Appellee

v

RICHARD M. STRONG, Specialist Five, U. S. Army, Appellant

16 USCMA 43, 36 CMR 199

No. 18,821

March 4, 1966

Captain Melvin K. Najarian argued the cause for Appellant, Accused. With him on the brief were Colonel Joseph L. Chalk, Lieutenant Colonel Jacob Hagopian, and Captain Clifford B. Hearn, Jr.

Captain Richard J. Andriolo argued the cause for Appellee, United States. With him on the brief were Colonel Joseph J. Crimmins, Lieutenant Colonel Francis M. Cooper, Captain Anthony Tersigni, and Captain Michael E. Phenner.

## Opinion of the Court

KILDAY, Judge:

Tried on a charge of premeditated murder, the appellant was found guilty of voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919, and sentenced to confinement at hard labor for thirty-six months, pay loss of $100.00 per month for the same period, and re-duction to the grade of E-1. The convening authority adjusted the loss of pay to $46.00 per month and the board of review, while affirming the findings and sentence, noted that the forfeitures would apply to pay becoming due on or after the date of the convening authority's action.

We granted the appellant's petition

for review to consider whether the law officer erred to the substantial prejudice of the petitioner when he ruled that further contact by counsel and petitioner with adverse witnesses during the court-martial would cease.

At the conclusion of the first witnesses' testimony, the record reflects the following:

"LO: Sergeant, you are excused at this time subject to recall.

"You are advised that you will not discuss your testimony with anyone which you have given here other than counsel for the government calling you in this case, and if anyone approaches you for that purpose you will make the fact known to trial counsel so appropriate action can be taken. You will remain under oath and you may be subject to recall later in the case.

"Does the defense desire any further instructions to the witness at this time?

"IC: This is the first time a witness has ever been excused in a case where this question occurred to me—but in this case it's improper. Can I speak to him? Before he took the stand I could interview him. Now, am I prevented from interviewing him hereafter?

"LO: Ordinarily the side calling him adopts him as a witness with limited cross-examination.

"However, you may discuss matters pertinent to the case, your testimony with counsel for either side but with no one else.

"WITNESS: Yes, sir.

"LO: You are now excused.
"(The witness withdrew.)

"LO: Gentlemen of the court, as you realize it is necessary for me to make rulings from time to time on matters both on proffered proof, testimony and the like. You are cautioned not to speculate on the reasons for those rulings or as to what the testimony may be. It cannot be but obvious that the government is seeking to elicit certain testimony which is not admissible in this case,

at least in the present posture of the case, and therefore I caution the court quite sincerely that they shall draw no inferences from the exchange and colloquy with respect to this witness, only to testimony actually given."

The second witness received a similar warning:

"LO: Right. Mrs. Chapman, you are excused at this time subject to recall. You are reminded that you will remain under oath, that you will not discuss your testimony in this case with anyone, the testimony that you have given, or the testimony that anyone else may be going to give in this case. If anyone should approach you with a view to discussing your testimony or theirs, that you refuse to engage in this conversation and report the matter immediately to Captain Hansen, trial counsel, the side calling you as a witness in this case.

"Defense counsel desire that specific authority be given for any further interviews on the part of the defense?

"IC: We ask that it be given, one, and, two, that Mrs. Chapman be particularly cautioned that the ends of justice will best be served if she doesn't discuss with her husband, who traveled with her to Zama today and who will be a witness at an early stage in the proceedings, any matters or questions that were covered.

"LO: All right, it may be appropriate, in connection with recall or discussion of the matter, to have some discussion with defense counsel in this case. You are authorized a discussion on the basis similar to discussions prior to the case being brought to trial. I particularly caution you not to discuss this matter with your husband, particularly since he will be a witness later in the case, and I particularly suggest that you do not discuss what you have said here today, or permit him to discuss with you what he may say at such time as he may be called.

"Are these instructions clear?

"WITNESS: Yes, sir, they are.

"LO: You are excused subject to recall.

"(The witness withdrew.)"

There then followed a colloquy concerning the time for convening the court the next day and the court then closed. The following morning, at the request of the defense counsel, the law officer called an out-of-court hearing attended by himself, the accused, counsel for both sides, and the reporter. After handling the matter for which the hearing was requested, the law officer said:

"Since we are having this out-of-court hearing I would also like to mention the fact for the record—as I advised you a few moments ago informally—that I intend to reverse the ruling which I made yesterday to permit adverse counsel to question witnesses who testified in court. I intend to make a brief statement reversing that ruling, pointing out that in the absence of surprise or lack of opportunity for adequate pretrial investigation, the time the witness has testified in court, that further contact with adverse witnesses has ceased and the witnesses are entitled to be protected from such contact and further examination of them by the adverse party will take place on the record in court.

"Does the government have any objection to that?

"TC: No, sir, the government will abide by your brief instruction on the defense witnesses.

"LO: Do you wish to make any objection for the record, Captain Massee?

"IC: Yes, sir, I object to the ruling of the law officer.

"LO: Do you wish to advance any other reason for it?

"IC: No.

"LO: All right."

When the court opened, the law officer told the court members:

"Gentlemen, before proceeding I want to make a note for the record of a reversal of a ruling I made yesterday. At the request of defense counsel in excusing two witnesses I indicated that witnesses might communicate with counsel for the adverse party as well as the counsel calling him. In reflection overnight I believe this was error on my part. Counsel for the defense has indicated they have not contacted these witnesses. The reason this is error is that in the event there is no showing of surprise or lack of opportunity for pretrial investigation, once a witness is called by one side, thereafter that testimony being in the record, questions by the adverse counsel should be on the record in open court. Consequently, if these witnesses are recalled my instructions to them will be changed, and all future witnesses will be advised in accordance with the standard warning."

Thereafter, he instructed each witness that he was to discuss the case with no one except the counsel who had called him. Where a witness was utilized by both trial and defense counsel, the warning was broadened to include each.

It is at once apparent that the law officer was acting under the impression that once a witness had testified for one side or the other, opposing counsel was thereafter limited in his right to question that witness to the judicial process of cross-examination, absent a showing of surprise or lack of opportunity for pretrial investigation.

The Government, in its brief, conceded this to be error when it stated that "the ruling of the law officer may have been based upon an incorrect interpretation of the law"; however, it argued that his action "should not constitute grounds for reversal under the circumstances of the case at bar absent a showing of material prejudice to the appellant's substantial rights."

We agree with the Government's concession of error. The rule is quite plainly set forth in paragraph 42c of

the Manual for Courts-Martial, United States, 1951:

"Counsel may properly interview any witness or prospective witness for the opposing side in any case without the consent of opposing counsel or the accused."

The rule is augmented in paragraph 48*g* of the Manual, supra, where it provides that:

"Ample opportunity will be given the accused and his counsel to prepare the defense, including opportunities to interview each other and any other person."

These provisions correctly state the law. United States v Smith, 13 USCMA 105, 32 CMR 105.

In United States v Aycock, 15 USCMA 158, 159, 35 CMR 130, we had occasion to consider the validity of an order by Aycock's commanding officer that the accused was "'not to contact Airman . . . D—— or his wife . . . or discuss the case with them at any time prior to the trial.'" Both were prospective witnesses against Aycock on charges then pending. In reviewing and dismissing his conviction for failure to obey this order on the ground that it was unlawful and unenforceable, we reviewed and cited numerous civilian authorities (*ibid,* pages 160–162) in support of the rule. See also United States v Enloe, 15 USCMA 256, 35 CMR 228, and the cases cited therein, where an Office of Special Investigations (Air Force) Command letter, establishing certain criteria for interviews by defense of OSI agents, was held to be invalid on the ground that it was restrictive of an accused's right to interview any and all witnesses. Additional citations of authority for this well-established proposition are not deemed necessary as they would merely be redundant.

We are at a loss to understand the reasoning behind the law officer's ruling. He did not dispute either counsel's right to interview any and all witnesses prior to trial and there was no suggestion of impropriety on the part of counsel (see United States

v Aycock, supra) or any indication of those special circumstances necessitating a limitation on an unfettered, private interview (see United States v Enloe, supra). He quite simply believed this right to be limited, as noted above, once a person has been called as a witness by one side or the other. This view, if it ever had any validity, was quite properly laid to rest and the rule correctly stated by the Supreme Court of Rhode Island in State v Papa, 32 RI 453, 80 Atl 12, 15 (1911):

". . . Witnesses are not parties, and should not be partisans. They do not belong to either side of the controversy. They may be summoned by one or the other or both, but are not retained by either."

In Commonwealth v Balliro, 209 NE2d 308, 315 (Mass) (1965), the Supreme Judicial Court of Massachusetts stated:

". . . Witnesses belong neither to the Commonwealth nor to the defence. They are not partisans and should be available to both parties in the preparation of their cases."

Admittedly, we have cited and discussed cases dealing with pretrial interviews but we do not believe the rule to be different once a witness has taken the stand. No cases or authorities have been called to our attention or disclosed by our research to sustain the law officer's ruling. To the contrary, Byrnes v United States, 327 F2d 825 (CA9th Cir) (1964), apparently favors our view. Byrnes was tried three times for attempted extortion and soliciting money for the purpose of influencing his actions as they related to his employment as an investigator for the Alcohol Tobacco Tax Division (ATTD), Treasury Department, United States Government. The original conviction was reversed and a new trial granted without explanation. On the second trial, the jury disagreed and a mistrial was declared. Following his third trial, Byrnes alleged that the court erred in denying his motion to dismiss the indictment

46

based on the Government's intimidation of defense witnesses.

The intimidation charged was based on the original position taken by ATTD that under Treasury Regulations it could not and would not permit its employees to talk about the case. This was modified to permit interviews with ATTD employees, but only if had in the presence of the United States Attorney or Regional Counsel for ATTD. But this second position was modified and the restrictions were lifted *prior* to the *second* trial and remained lifted thereafter.

Byrnes' attorney desired to interview eight Government employees as prospective witnesses, and the trial judge, at a pretrial hearing, advised each and every one of them that they were under no restrictions and in fact encouraged them to talk. Four of these persons were subsequently called by the defense and three of them by the Government.

The Court of Appeals assumed that the attorneys for Byrnes spoke with those witnesses he desired to speak to prior to the third trial. At least no claim was made by Byrnes prior to trial that any witness refused. We are unaware of the identity of the witnesses at the first or second trial but it is logical to assume that the three who testified for the Government at the third trial also so testified at the prior two. These then, were witnesses called by the Government, and denominated as such, for while this third trial was a separate and distinct action, in which before its commencement witnesses had not yet testified, if necessary their prior testimony could have been utilized in this trial by the Government under certain well-known conditions. See the discussion of the admissibility of prior testimony in United States v Eggers, 3 USCMA 191, 11 CMR 191.

More to the point are decisions by two District Courts of Appeals of California (Walker v Superior Court, 155 Cal App 2d 134, 317 P2d 130 (1957), and Clark v Superior Court, 190 Cal App 2d 739, 12 West's Cal Reptr 191 (1961)) where it was held that neither the sheriff nor the prosecuting attorney has the right to instruct a witness who had appeared before the grand jury in behalf of the State not to talk to the defendant or his attorney. See also Leahy v State, 111 Tex Crim 570, 13 SW2d 874 (1928).

While, for the most part, we have referred to the right of counsel to interview witnesses, it goes without saying the right is basically that of the defendant since counsel's participation is dependent upon their relationship.

Having found error herein, our only concern is with whether that error prejudiced the substantial rights of the accused. We do not think it did.

Some suggestion has been advanced that the law officer's error operated to deprive accused of the effective assistance of counsel. We do not so evaluate the matter, however, for we find no indication it resulted in even the slightest circumscription of any right the defense desired to exercise.

In United States v Enloe, supra, we found substantial prejudice since the contemplated interview of the Office of Special Investigations agents was an important part of his counsel's pretrial preparation and, as such, involved his right to be represented by counsel. Here there was no pretrial bar, nor was application ever made to the law officer to reverse his ruling. It should perhaps also be noted that, when counsel had completed examination of the witnesses in open court and they had been released, a request to recall them for further cross-examination would have been, in the ordinary circumstance, a matter within the law officer's discretion. See United States v Smith, 15 USCMA 416, 35 CMR 388. There is no indication in the record, and nothing is presented on this appeal, to indicate even the remotest interest on the part of the defense to interview the witnesses to determine whether further examination was necessary or desired. Trial defense counsel at no time indicated he desired to interview any witness who had received the warning, nor has there ever been any claim that the law officer's

**47**

ruling prevented him from properly and adequately defending his client; the point is not urged by counsel at this or any other level. Leahy v State, supra. See also numerous cases collated in West's General Digest, Criminal Law, Key 666½, Consultation between accused or counsel and witnesses.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I fully agree with the author of the principal opinion that it was erroneous for the law officer to deny the defense counsel and accused the unconditional right to communicate with any of the Government's witnesses after they had appeared on the stand and testified. United States v Aycock, 15 USCMA 158, 35 CMR 130; United States v Enloe, 15 USCMA 256, 35 CMR 228; United States v Meyer, 15 USCMA 268, 35 CMR 240; United States v Beck, 15 USCMA 269, 35 CMR 241; United States v Williams, 15 USCMA 270, 35 CMR 242; Manual for Courts-Martial, United States, 1951, paragraph 42c. Indeed, the Manual, supra, expressly notes that, if it is found desirable to place a witness "under the rule," he should be advised as follows:

"You are instructed not to discuss your testimony in this case with anyone *except the counsel or the accused.* You will not allow any witness in this case to talk to you about the testimony he has given or which he intends to give. If anyone, *other than counsel or the accused,* attempts to talk to you about your testimony in this case, you should make the circumstances known to the counsel for the side originally calling you as a witness." [Emphasis supplied.] [Manual, supra, Appendix 8a, page 511.]

This instruction, constituting a Presidential regulation which is neither forbidden by nor inconsistent with the Code, has the force and effect of a statutory enactment. United States v Smith, 13 USCMA 105, 32 CMR 105. Thus, even if the cited authorities were deemed inapplicable, the matter of contact between defense counsel and witnesses who have testified has been completely set at rest by what amounts to a binding rule of law.

I must respectfully disagree, however, on the conclusion there is no prejudice to the accused here. When one tampers with or restricts the right of defense counsel and the accused to interview witnesses, whether prospective or having already appeared in the case, he effectively delimits the preparation of the defense for trial and denies the accused his right to counsel. Prejudice, therefore, is inherently present, and the error is not of the sort intended to be cured by application of a harmless error statute. Kotteakos v United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239 (1946). I commend to my brothers' attention the excellent opinion therein of Mr. Justice Rutledge, speaking for the Court, regarding the interpretation to be placed on such enactments as Uniform Code of Military Justice, Article 59, 10 USC § 859. Particularly, should it be noted that the approval of a comparable statute for the Federal court system was attended by "fear of too easy relaxation of historic securities thrown around the citizen charged with crime" and the Supreme Court's statement, at page 762, is worthy of repetition:

". . . Although the final form of the legislation was designed, and frequently has been effective, to avoid some of the absurdities by which skilful manipulation of procedural rules had enabled the guilty to escape just punishment, § 269 did not make irrelevant the fact that a person is on trial for his life or his liberty."

In short, as was said in Bruno v United States, 308 US 287, 84 L ed 257, 60 S Ct 198 (1939), the rule of harmless error, as embodied in the statute, is "intended to prevent matters con-

cerned with the mere etiquette of trials and with the formalities and minutiae of procedure from touching the merits of a verdict. Of a very different order of importance is the right of an accused to insist on a privilege which Congress [and, *a fortiori*, the Constitution] has given him." *Id.*, at page 294. And that the doctrine of harmless error does not embrace the right to counsel and the hindrance of that right by denying accused his means of further preparation through renewed interviews with the Government's witnesses is also shown by the same Court's declaration in Glasser v United States, 315 US 60, 86 L ed 680, 62 S Ct 457, at page 75:

> "To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. *The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.*" [Emphasis supplied.]

Indeed, such is the teaching of our own cases. In United States v Tellier, 13 USCMA 323, 32 CMR 323, we refused to search for prejudice in reversing accused's conviction for denial to him of the services of appointed counsel. In United States v Enloe, supra, confronted with an order denying the right to interview witnesses privately, we relied in part on *Tellier*, supra, and rejected the argument there was no prejudice to the accused. Thus, we said, at page 262:

> "Finally, the Government argues that, assuming the invalidity of the order [regarding interview of witnesses], there was no prejudice to the accused. We point out that the testimony of the agents dealt with the accused's pretrial statement and the conduct of a search and seizure of his belongings. Their interview was an important part of his counsel's pretrial preparation and, as such, involved his right to be represented by counsel. United States v Tellier, 13 USCMA 323, 32 CMR 323.

> *We decline to speculate as to what the results of such interviews of these important witnesses would have been, absent the restriction thereon sought to be imposed by the Government. Bobo v Commonwealth, supra; Gallman v State, supra. Prejudice, therefore, is apparent on the face of the record, and reversal must be had.*" [Emphasis supplied.]

See also United States v Aycock, supra, and cases cited therein.

In like manner, the Supreme Court of Appeals of Virginia sought not for prejudice in reversing the conviction below in Bobo v Commonwealth, 187 Va 774, 48 SE2d 213 (1948). There, it said:

> "When the court is dealing with mandatory requirements of the law the principle strictissimi juris obtains. In the instant case human life is involved and the question to be determined is whether or not the accused, who has been sentenced to suffer the extreme penalty of the law, has had that fair trial guaranteed to him by the Constitution. Here it may be, according to the evidence, that a homicide was committed in cold blood, yet notwithstanding the enormity of the crime the prisoner, nevertheless, is entitled to the trial which the mandate of the Constitution requires. *We must not permit the doctrine of harmless error or the requirement that prejudice must be shown to over-balance those fundamental rights.*" [Emphasis supplied.]

I need not remind my brothers that the accused Strong, as Bobo, was on trial for premeditated murder, without limitation of punishment.

In Leahy v State, 111 Tex Cr 570, 13 SW2d 874 (1928), on which the principal opinion relies and in which the court found it error to deny defendant an opportunity to interview a witness in private, its refusal to reverse was premised on the record's affirmative showing "that the appellant knew in advance everything that the witness Martinez would testify to at the trial." *Leahy*, supra, at page 883. Moreover, it pointed out:

". . . The circumstances of this case were very unusual. The trial court perhaps had reasons which were to him amply sufficient for his action. The court is of the opinion that the record as a whole shows an absence of injury to appellant arising from the matter complained of."

Here, there are no unusual circumstances. The law officer merely ruled twice, and over repeated objection, that there would be no contact by defense counsel with adverse witnesses, except on the basis of surprise or inadequate pretrial opportunity to interview them. Having objected and made his position clear, the defense counsel was required to abide by the erroneous ruling, on pain of being held contumacious. The record does not, as in *Leahy,* supra, show that he did not wish to speak to the witness further. On the contrary, his objections to the warning indicate he might have wished to do so. At most, the record is simply silent. Counsel, therefore, could do nothing further in interviewing the witnesses, no matter how important to his case, unless he could meet the law officer's unlawfully imposed conditions.

Such being the case, it seems clear that accused's right to be properly defended may fairly be said to have been hampered here. And, as I have noted, we deal with the right to counsel, one so sacredly imbedded in our Anglo-American jurisprudence that we dare not, from these Olympian heights, pretend to judge the effect of so egregious an error at a capital trial, whose transcript is merely silent—in accordance with the law officer's rulings—as to whether counsel wished to examine the witnesses further but was prevented from doing so by the illegal conditions imposed on him. To require him uselessly to parrot such a desire at trial or in a brief, when represented by different counsel on appeal, is to give comfort to the pettifogger who will make such representations falsely and to deny relief to the honest lawyer who seeks ethically to stay within the bounds of the judge's ruling after having respectfully noted his objection.

I would reverse the decision of the board of review and order a rehearing.