## UNITED STATES

v.

**Airman Kenny HAWKINS, FR 429–37–2397, United States Air Force.**

### ACM S28172.

U.S. Air Force Court of Military Review.

Sentence Adjudged 24 July 1989.

Decided 30 March 1990.

---

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Major Terry M. Petrie and Captain Suzanne Peters, USAFR.

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

## DECISION

LEONARD, Judge:

Appellant was convicted of larceny, divers assaults and batteries of his girlfriend, violating an order of his superior commissioned officer to have no further contact with his girlfriend, and obstruction of justice. On appeal he asserts two errors, neither of which have merit.

The first error asserted is that appellant's guilty plea to violation of the order was improvident because the order was unlawfully over-broad and interfered with appellant's rights to free speech and to communicate with others. The lawfulness of the order was not attacked at trial, but the appellant maintains the fault lies with the military judge for not exploring the lawfulness of the order during the providency inquiry on this offense.

The order in question was given to appellant personally by his commander.* It forbade appellant to have any verbal or physical contact with Airman Connelly, Airman Crenshaw, and Airman First Class Lambert unless such contact was arranged by the Area Defense Counsel. The need for the order arose out of the other offenses charged against appellant and his prior relationships with Connelly, Crenshaw, and Lambert. At the time of the order, Airman

---

* The order stated the following: "Effective this date, you are hereby directed not to have any contact, either verbal or physically with Airman Michelle Connelly, Airman Dion C. Crenshaw, or A1C Troy W. Lambert, regardless of the reason. If contact is desired with the above individuals, then you are required to contact the Area Defense Council (sic). You will acknowledge receipt and understanding of this order below."

Connelly had been the appellant's girlfriend for approximately ten months. Airman Crenshaw was a witness to the appellant's larceny and Airman First Class Lambert was the victim of the larceny. All three individuals were members of appellant's unit, the 650th Security Police Squadron.

Appellant's relationship with Connelly had been very rocky. His prior altercations with her had caused the security police to be called to her dormitory room at least four times at the request of occupants of adjoining rooms who were disturbed by the fights. Appellant had received a letter of reprimand for assaulting Connelly on several occasions between October 1988 and March 1989. Further, appellant pleaded guilty to assaulting Connelly on divers occasions between 1 January 1989 and 14 June 1989 by hitting her with his open hand and closed fist and kicking her with his foot. In aggravation, trial counsel called as witnesses three of the occupants of Connelly's dormitory who testified about appellant assaulting Connelly and the disturbances his altercations with her caused in the dormitory.

When appellant became a suspect in the theft of a radio from Lambert's car, he urged Connelly and Crenshaw to assist him in a cover up of the theft by making false statements to investigators. When he found out that they were not going to assist him in the cover up, he threatened to "hit" or "drop dime" on them. Connelly testified she was afraid appellant might try to get even with her for telling investigators the truth and she was relieved when he was put into pretrial confinement after violating the order to have no further contact with her. However, she also testified that, despite her fear, she still loved appellant and continued to have sexual intercourse with him after he had been given the order not to have any further contact with her.

Appellant's commander was aware of the previous history of physical abuse of Connelly by appellant. After appellant tried to persuade Connelly and Crenshaw to lie to help cover up the theft and threatened them when he found out they were not going along with his scheme, the commander called appellant into his office and gave him the order. The same day he received the order appellant went to Connelly's room at her dormitory and spent the night with her. The next day he was observed entering her room again and the violation of the order was reported to his commander. At this point, the commander ordered appellant into pretrial confinement and no further violations occurred.

▮▮▮ Appellant pleaded guilty to violation of the order and lawfulness of the order was not contested at trial. There was no indication during the providency inquiry that lawfulness of the order was in question. An order of a superior commissioned officer may be inferred to be lawful and it is disobeyed at the peril of the subordinate. MCM, Part IV, paragraph 14c(2)(a) 1984. It was not the military judge's duty to raise the issue of the lawfulness of the order. The person accused of violating an order has the burden of showing that the order is not lawful. *United States v. Smith*, 21 U.S.C.M.A. 132, 45 C.M.R. 5 (1972). Determinations of lawfulness of orders are interlocutory questions of law to be resolved by the military judge upon proper motion made at trial. R.C.M. 801(e)(1) and (5) Discussion. Failure to raise the question of lawfulness of an order by motion during the trial constitutes waiver of the issue. R.C.M. 801(g); R.C.M. 905(e); *United States v. Dumford*, 28 M.J. 836 (A.F.C.M.R.1989). Therefore, we find the assigned error was not preserved for appeal.

▮▮▮ Had the issue of lawfulness of the order been preserved for appeal, we would find the order lawful as applied to prevent further contacts with Connelly under the facts and circumstances of this case. It was clearly in furtherance of valid military purposes of maintaining good order and discipline in appellant's unit, protecting the well-being of members of that unit, and preventing further obstruction of a military investigation. *United States v. Wine*, 28 M.J. 688, 691 (A.F.C.M.R.1989); MCM, Part IV, paragraph 14c(2)(a)(iii). The order was specific as to time and place

and definite and certain in describing the prohibited acts. *United States v. Womack*, 29 M.J. 88 (C.M.A.1989); MCM, Part IV, paragraph 14c(2)(d). The order was not overly broad in scope, did not impose unjust limitations on personal rights, and was not contrary to any established law or regulation. 29 M.J. at 90; MCM, Part IV, paragraph 14c(2)(a)(iv). Further, even if the order infringed on appellant's rights to free speech, it would meet the test of strict scrutiny required for such an order. Significant government interests were involved and the order was a necessary means to protect these interests. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).

Finally, appellant asserts that his case is governed by *United States v. Wysong*, 8 U.S.C.M.A. 249, 26 C.M.R. 29 (1958). This is incorrect. Wysong's commander gave Wysong an order "not to talk to or speak with any of the men in the company concerned with this investigation except in the line of duty." The order was held to be illegal because it was too vague and indefinite and provided for no exceptions. The *Wysong* court stated that, if the order had been more narrowly and tightly drawn and worded to make it specific, definite and certain as to the individuals concerned, it might have been sufficient to support a conviction. 26 C.M.R. at 31. The cases on this issue after *Wysong* were decided primarily upon a determination of whether the order restricted the accused's ability to prepare for his defense by not allowing him to participate in interviews of witnesses with his counsel. *United States v. Strong*, 16 U.S.C.M.A. 43, 36 C.M.R. 199 (1966); *United States v. Aycock*, 15 U.S.C.M.A. 158, 35 C.M.R. 130 (1964). Appellant's order avoided the problems of *Wysong* and its progeny by specifically limiting the prohibited contacts to three named individuals and providing an exception for contacts arranged through appellant's counsel.

The second error asserted is the military judge's refusal to give a defense requested sentencing instruction on the effect of a bad conduct discharge. The instruction given by the military judge was the one set forth in DA Pamphlet 27–9, *Military Judges' Benchbook*, paragraph 2–37, at 2–44 (October 1986).

We find the military judge's ruling correct. *United States v. Soriano*, 20 M.J. 337, 341–343 (C.M.A.1985); *United States v. Berger*, 23 M.J. 612, 616 (A.F.C.M.R. 1986). The instruction requested by the defense was unnecessarily long and repetitive. Further, as the military judge stated, some of the matters it covered were matters more appropriate for argument of counsel than judicial instruction. Even if we found that error had been committed, it would be non-prejudicial. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *Soriano*, 20 M.J. at 343; *United States v. Holt*, 28 M.J. 835, 836 (A.F.C.M.R.1989).

Having examined the record of trial, the assignment of errors, and the government's reply, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. The findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge MURDOCK concur.