UNITED STATES, Appellee,

v.

Richard L. CUMBERLEDGE, Airman
First Class, U. S. Air Force,
Appellant.

No. 29,767.

ACM 21673.

U. S. Court of Military Appeals.

Feb. 20, 1979.

Appearances: For Appellant—*Captain Thomas S. Markiewicz* (argued); *Colonel Robert W. Norris* (on brief); *Colonel Jerry E. Conner*; *Major Byron D. Baur.*

For Appellee—*Major Alvin E. Schlechter* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

Opinion of the Court

FLETCHER, Chief Judge:

This and three companion cases[1] were previously before this Court; the resultant corrective action was due to the disqualification of the reviewing authority because of immunity or clemency given by a subordinate commander to certain prosecution witnesses. We have now[2] granted a hearing

---

1. *United States v. Chavez-Rey, United States v. Lemons, United States v. Brooks,* 1 M.J. 34 (C.M.A.1975).

2. Appellant, tried by general court-martial, was convicted of two specifications of a violation of Article 134, 10 U.S.C. § 934, two specifications of Article 92, 10 U.S.C. § 892 and a violation of Article 86, 10 U.S.C. § 886. He was sentenced

to a bad-conduct discharge, confinement for one year, reduction to the lowest pay grade, and forfeiture of $126 a month for 12 months. The convening authority reduced one specification under Article 134 to a lesser included offense but, upon reassessment, approved the sentence. While the Court below affirmed, we reversed and ordered a new review and action. The record action affirmed the findings, but on

in this case to determine if the legal representative of the accused was denied fair access to the prosecution's sole witness and whether the accused was subjected to and prejudiced by improper cross-examination. Both of these questions are answered in the negative, and we affirm the court below.

■ Examination of the record of trial and the Article 32 [3] investigation report indicates that the defense requested the presence of the two key prosecution witnesses,[4] Airman Spencer and Airman Jorges, at the Article 32 hearing, and specifically objected to any use of these witnesses' sworn statements at the hearing as the defense had not been able to either depose or interview these men. The hearing officer, upon examination both of a Captain Churchill's affidavit[5] and his testimony at the hearing, decided that the two witnesses were unavailable and denied the defense request. The factors cited by Captain Churchill, and adopted by the hearing officer, were time delays, expense, and the distances involved.[6] Ironically, Captain Churchill's affidavit and subsequent trial testimony indicated that sufficient TDY funds existed to bring the

men to Holloman Air Force Base, the situs of the hearing. The defense persisted in its requests to interview these witnesses, and the civilian counsel ultimately drove to Albuquerque to interview Spencer.[7] After some difficulty in obtaining permission to interview Spencer, counsel was finally able to interview this witness on two occasions prior to trial some two months after the Article 32 investigation.

At trial the defense renewed the objection earlier framed at the Article 32 investigation. Major Churchill[8] testified, as did the prosecutor, Captain Carter, the civilian defense counsel, Mr. Jordan, and the two witnesses in question. Major Churchill confirmed that he had obtained statements from Spencer and Jorges, and then arranged for "protective" transfers for the men from Holloman AFB. He stated that he "assumed" sufficient TDY funds had existed to bring the two men to the Article 32 hearing following the defense request,[9] and admitted that he had failed to initiate contact with the immediate commander of either witness in order to determine their

reassessment, reduced the confinement and forfeitures to ten months. The Court of Military Review then ordered a new review and action, holding the prior deficient. The third Staff Judge Advocate's review and convening authority's action approved the findings and sentence as modified by the second reviewing action and the Court of Military Review affirmed.

3. Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832.

4. The instant case once again presents the issue of denial of access to the full discovery process envisioned by Congress under the provisions of Article 32 and requires a broader analysis than that of mere access to a witness as addressed in *United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976), and *United States v. Willis*, 3 M.J. 94 (C.M.A.1977).

5. I.O. Exhibit 5, which is attached as an Appendix to this opinion.

6. Both men had been interrogated by the OSI and Captain Churchill, the staff judge advocate, and within 7–10 days of executing his statement, Spencer was transferred to Kirtland, AFB, and shortly thereafter Jorges was sent to Little Rock AFB for their protection. These two bases were 250 and 1000 miles respectively away from the site of the Article 32 hearing.

7. Mr. Jordan, the civilian defense counsel, stated his primary purpose in going to Albuquerque was to interview Spencer, and that he simply utilized his time awaiting decision by the authorities concerning whether he would be allowed to interview Spencer in order to conduct research on this and another case at the University of New Mexico Law Library.

It must be stated again that the prosecutor has no authority to deny the defense access to a witness. *United States v. Enloe*, 15 U.S.C. M.A. 256, 35 C.M.R. 228 (1965).

8. Captain Churchill had been promoted during the period between the Article 32 hearing in January and the trial in March.

9. Major Churchill, in fact, acknowledged that funds were provided and arrangements made to transport Jorges from Little Rock AFB to Kirtland AFB to speak with Spencer in December, prior to the Article 32 hearing. It is, therefore unpersuasive that either the cost, the time delays, or mileage involved—the three factors cited by Churchill and adopted by the investigating officer—were legitimate reasons under the facts of this case for declaring the witnesses unavailable.

availability in accordance with the applicable Manual provision.[10] Captain Carter and Airmen Spencer and Jorges each confirmed that transfers had been secured because of concern for the safety of the witnesses. Captain Carter further admitted that he had blocked the civilian defense counsel's initial attempts after his arrival in Albuquerque to interview Spencer at nearby Kirtland AFB.

The defense argued that the actions of the Government in denying access to the key prosecution witnesses until the very month of trial prejudiced the preparation of the case. The factors stressed were: (1) the actions of the staff judge advocate, Major Churchill, in first obtaining the witness statements, of then securing transfers, and finally in making the determinations that these witnesses were unavailable to return for the Article 32 hearing without even initiating contact with the appropriate officials; and, (2) the adoption of Major Churchill's reasoning as to the issue of unavailability by the investigating officer when the evidence indicated that neither the cost, time, nor distance reasons relied upon were sufficient. The defense further complained that the effective discovery purposes of Article 32 had been thwarted, and declined to request at this late date a continuance to interview Spencer and Jorges because:

[T]hey have been through one trial already on much the same testimony. Their testimony is bolstered on every occasion; they have talked to the prosecution before the defense, which isn't bad, but I think it's bad if done by design.[11]

Counsel for the appellant urge that the military judge erred in apparently adopting the reasoning of the staff judge advocate (as set forth in the appendix to this opinion) and the Article 32 investigating officer on the question of the availability of Spencer and Jorges for the Article 32 hearing. The recent holdings in *Ledbetter* and *Chestnut* [12] support this position inasmuch as the evidence demonstrates that the Government, despite sufficient funds and the ability to secure these witnesses' presence at the Article 32 hearing, declined to act properly upon specific defense request. We are not unmindful of the potential problems existing as to the safety of these witnesses; however, the action of the Government in totally blocking defense access to these men until the month of trial, and its failure to provide a more meaningful substitute [13] for their presence at the hearing would persuade us that the rationale of *Ledbetter* and *Chestnut* should control were it not for the clear evidence of record that the accused's lawyer did confer at some length with these witnesses. These wit-

10. The defense was referring to paragraph 34*d*, Manual for Courts-Martial, United States, 1969 (Revised edition); Major Churchill admitted that arrangements to bring the witnesses back could have been done at the base level, but that he had not attempted to secure such arrangements.

11. It is clear that this counsel was merely acknowledging the existence of a *fait accompli* —the prosecution had foreclosed discovery to the defense, and by allowing the two witnesses to confer and testify at an earlier trial on the same matters had so solidified their testimony that a continuance for an additional interview would be pointless. We cannot agree that such a statement by defense counsel indicated either satisfaction with the situation or acknowledgment that he had not been unfairly hampered in his preparation of his case.

12. *United States v. Ledbetter*, 2 M.J. 37 (C.M.A.1976); *United States v. Chestnut*, 2 M.J. 84 (C.M.A.1976).

13. Assuming a proper record to support government contentions that exigencies such as the need to protect witnesses existed, we feel that it is nevertheless incumbent upon the Government to provide the defense counsel with *timely* and *meaningful* access to the witnesses. Initially, it should be noted that the witnesses are being protected from actions by the accused or his cohorts, not the defense attorney, and it is, therefore, improper to deny the counsel the necessary avenues of discovery provided by Congress. Secondly, timely use of the deposition process would provide the defense with meaningful discovery of these witnesses' testimony and serve the dual purpose of providing the Article 32 investigating officer and the convening authority with a better record upon which to base the initial decision of whether to try the case, as well as affording the defense counsel the opportunity for adequate preparation of his case.

nesses had previously testified at a prior trial in a companion case and this testimony was in the possession of the accused's counsel. Not only did the civilian counsel admit that the former testimony was expected by him to be "much the same" but furthermore, unlike *Ledbetter,* no motion for a continuance was made to allow further pretrial examination of the witnesses. Therefore, in spite of naked defense assertions, we are unable to find prejudicial denial of right of access to the witnesses under these facts. Thus, the trial judge did not err in denying the defense motion to dismiss the charges or suppress the testimony of the witnesses.

We also find the second granted issue without merit. The decision of the United States Air Force Court of Military Review is affirmed.

Judge PERRY concurs.

*Appendix*

Captain James M. Churchill, 126–32–5227, Staff Judge Advocate, Holloman Air Force Base, New Mexico, was called as a witness in an Article 32 investigation on 15 January 1974, was sworn and testified in substance as follows:

Airman William R. Jorges is presently on extended TDY at an Air Force base over 1,000 miles away and is scheduled to return in sixty days. He has been gone from Holloman Air Force Base a little over thirty days. Airman Basic John S. Spencer is presently in confinement at an Air Force base which is a substantial distance from Holloman Air Force Base. Airman Spencer left Holloman approximately ten days after his general court-martial which took place the first week in November 1973 and is in a "sentenced prisoner" status as a result of a sentence to one year confinement at hard labor. I made the decision not to have them called back to testify at this investigation, that is, that they were to be considered unavailable as witnesses for there would be considerable time delay and expense to the Government to have them sent back as witnesses. In regard to Airman First Class Cumberledge, mostly all of the evidence

available was had by me by 29 November 1973. Charges against Airman First Class Cumberledge were first begun to be drafted approximately the 4th of January 1974.

The factors I considered in determining the unavailability of Spencer and Jorges were their distance from this proceeding and resulting expense to the Government and also the resulting delay which would be incurred. Also Spencer's confinement at another installation would have required an escort for his travel to Holloman. Hypothetically, if these statements of these two individuals did not exist, they could conceivably have been sent back to Holloman as witnesses to testify. There are TDY funds available. I am not the special court-martial convening authority.

I personally know Spencer and Jorges. Spencer was convicted of sale of heroin during the first week in November 1973 and received as a sentence a bad conduct discharge, confinement at hard labor for one year and some forfeitures. There were no specific deals made with Airman Spencer in regard to him providing the subject statement (Exhibit 4). He was advised that any cooperation he would give concerning the drug trafficking at Holloman Air Force Base would be made known to the general court-martial convening authority. In regard to Airman Jorges, he was advised of certain evidence against him concerning offenses that he might have committed and was told his cooperation was sought. No specific deal was made. No decision has been made whether to prefer charges if Airman Jorges testifies. However, there is a reasonable possibility that no charges will be preferred if he testifies. Most of the evidence against Jorges that he was advised of was provided from the statement of Spencer (Exhibit 4). However, he was not shown the statement but was only told of the specific facts in it. His interview concerning the statement lasted two days at the OSI office. In regard to Airman Cumberledge, subsequently, after the general discussion, the investigators went back over Cumberledge's involvement with Jorges which resulted in Exhibit 3. Jorges dictat-

ed Exhibit 3 to Mrs. Underwood, Secretary at OSI, and she typed it. The OSI provided the Social Security number that he found in the statement and also ascertained the exact date that Jorges returned from Germany as Jorges could not recall. This date is also included in the statement.

The statement of Spencer (Exhibit 4) was taken in a similar manner involving a discussion with the OSI over a three day period. Captain Robert Johnson, Spencer's counsel, was present during a substantial portion of this interview.

I have read the foregoing summarized transcription of the testimony given by me and it is true and correct to the best of my knowledge.

(s) JAMES M. CHURCHILL, Captain, USAF

Subscribed and sworn to before me this 15th day of January 1974.

(s) Alice M. Morehead
    Notary Public

My commission expires
September 18, 1977.

COOK, Judge (concurring in the result):

The ruling under review is one denying a defense motion to dismiss the charges, or, alternatively, to prevent two government witnesses from testifying[1] because of alleged misconduct by government officials in the preliminary proceedings which was represented as a "conspiracy" to keep the witnesses "from . . . [defense counsel] until the very last moments of trial." However, civilian defense counsel conceded he did not want "a continuance to interview" the witnesses. Also, he admitted he had conferred with the witnesses before trial and anticipated their testimony at accused's trial to be "much the same" as that given at a completed trial of a companion case. Further, he disclaimed any interest in a continuance to prepare for cross-examination of the witnesses.

Improper interference with accused's right to access to a witness is not generally remedied by dismissal of the charges against the accused. Rather, the appropriate initial remedy is to continue the trial to allow the accused to exercise the right. Only if the Government persists in denying the accused the right, and, thereby, deprives him of effective preparation for trial, can there be administered the strong medicine of abatement of the proceedings or the barring of the testimony of the witness at trial. *United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976). *See also United States v. Willis*, 3 M.J. 94 (C.M.A.1977). As accused's counsel had actually interviewed the witnesses in advance of trial, and, concededly, were fully prepared to cross-examine them at trial, no right of access to the witnesses remained to be vindicated. In my opinion, the trial judge properly denied the defense motion to dismiss the charges or to suppress the testimony of the witnesses.

The second assignment of error questions the propriety of accused's cross-examination. The alleged improprieties relate to "uncharged misconduct" and an "insinuation" that the accused "may have threatened" Airman Spencer. Government counsel dispute some of the instances of alleged uncharged misconduct relied upon by the accused and contend that others are taken out of context. The record indicates the trial judge sustained defense objections in some of the instances, and on several occasions specifically instructed the court members to disregard the matter now in dispute.

Considering the judge's trial rulings and instructions to disregard, I am impelled to conclude that if there was a residuum of impropriety in the cross-examination of the accused on acts of uncharged misconduct, appellate consideration of it as ground for reversal was effectively foreclosed by the defense request that the instruction proposed by the judge not be given. *See* my

---

1. In later argument, defense counsel refined the request for relief to include an alternative request that testimony be suppressed. The argument mentioned only the testimony of Spencer, but counsel's statement was interrupted by the judge, and he was not given an opportunity to complete it. As the initial objection involved two witnesses, I do not regard counsel's statement as affirmatively limiting the prayer for alternative relief to the testimony of Spencer.

separate statement in *United States v. James*, 5 M.J. 382 (C.M.A.1978).

Turning to the "insinuation" that the accused had threatened Spencer, the subject was first raised at the hearing on the defense motion to dismiss the charges. On that motion, Spencer testified as a defense witness. Upon questioning by defense counsel, he indicated that he feared for his safety at Holloman and believed that he could be shot. On cross-examination, he explained that the people who "might want to kill" him were the "guys" whom he had implicated in drug offenses; these included the accused. Spencer testified also that "last week," "right out" on the steps of the courtroom building, he had heard the accused say to one of the others he had implicated, "He'll get his." As no one else was in the area, Spencer inferred that the remark was a threat to him, although he admitted he did not "know for sure." Further, he said that while at Kirtland he had been informed of a telephone message that had been received to the effect that if he "went through with this . . . [he] wouldn't live long"; he had told civilian defense counsel of this message.

In his testimony on the merits, Spencer said nothing about threats. However, on cross-examination defense counsel asked whether he had been court-martialed for the sale of heroin. When he admitted the fact, counsel asked Spencer whether he had been "approached about making statements" about others. Again, Spencer replied in the affirmative. Thereupon, counsel inquired into the substance of the conversation. Spencer explained that "the main thing" was "my protection." On redirect examination by trial counsel, Spencer stated that the only promise made to him in connection with his testimony against the accused was his "protection."

Testifying in his own behalf, the accused represented during direct examination that he had "heard all the testimony presented against" him. Through a series of questions calling for a "yes" or "no" answer, he denied various details of the testimony of both Spencer and Jorges that implicated him in the drug offenses. In cross-examination, he admitted he knew Jorges and Spencer "pretty well," and that there was "always a lot of conversation in the barracks" about drugs. At that point, trial counsel turned to Spencer's testimony relating to his protection. The ensuing colloquy is as follows:

Q: All right, now you heard Airman Spencer testify that he was concerned about his personal protection, is this not correct?

A: Yes, sir.

Q: Personal safety, and why—do you have any idea as to why he would say that?

A: Well sir, if I told all the lies that he told about people, I'd be scared for my life, too.

Appellate defense counsel contend that the colloquy constitutes an invidious suggestion "that the accused may have threatened or intimidated Airman Spencer." They concede that accused's response "stifled that line of questioning," but they insist that the mere attempt was so prejudicial a "smear" of the accused by uncharged misconduct as to require reversal of the findings of guilty of the drug charges.

That a party has threatened to injure a witness if he testifies against him is admissible as "affirmative evidence of the weakness" of his own case. *United States v. Remington*, 191 F.2d 246, 251 (2d Cir. 1951), *cert. denied*, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952); *see also* 2 Wigmore, Evidence § 278 (3rd ed. 1940). The evidence recited earlier of the threats to Spencer provided a solid basis for a careful examination of the accused on the subject. It may be, as appellate defense counsel acknowledge, that the accused's adroitness in turning the preliminary question to his own advantage "stifled" trial counsel's further pursuit of the matter, but it was not error for counsel to ask the question he did. Nor do I discern disadvantage to the accused from the exchange.

Neither of the accused's lawyers objected to the question or requested the trial judge to instruct the court members to disregard

it and the answer. The record of their objections to arguably impermissible questions and other evidence demonstrates their alertness to potentially adverse matter. That they did not oppose the question or the answer suggests they did not consider the exchange harmful to the accused. I am not persuaded that the requirements of a fair trial demand we now treat the matter as so detrimental to the accused as to necessitate reversal of the findings of guilty.

For the reasons given, I join in the affirmance of the decision of the United States Air Force Court of Military Review.