UNITED STATES, Appellee,

v.

Jesse L. KILLEBREW, Sergeant United
States Air Force, Appellant.

No. 33,411.
ACM S24403.

U. S. Court of Military Appeals.

July 21, 1980.

For Appellant: *Lieutenant Colonel Bruce R. Houston* (argued); *Captain Willard K. Lockwood* (reargued); *Colonel Robert W. Norris* (on brief).

For Appellee: *Colonel Julius C. Ullerich, Jr.* (argued); *Major Robert T. Mounts* (reargued); *Colonel James P. Porter.*

Opinion of the Court

EVERETT, Chief Judge:

The appellant was tried on March 16 and 17, 1976, by special court-martial convened at Minot Air Force Base, North Dakota, and, contrary to his pleas, was convicted by the military judge of 5 marihuana offenses.[1] Thereupon, he was sentenced to a bad-conduct discharge, confinement at hard labor for 4 months, and reduction to the lowest enlisted grade. Both the convening and the supervisory authorities approved these results, and the United States Air Force Court of Military Review affirmed.

In this Court the appellant complains that the Government wrongfully denied his trial defense counsel meaningful access to a material witness and thereby deprived him of the effective assistance of counsel in preparing his case. We conclude that counsel should have been allowed access to the witness and that further proceedings are appropriate to determine whether appellant's defense was prejudiced by the failure to permit such access.

Agent Roscoe of the Air Force Office of Special Investigations (OSI) was sent into Minot Air Force Base in order to infiltrate the base drug community in an undercover status. On January 31, 1976, a local OSI agent introduced him to Airman McElroy, an OSI informant. On that same date, McElroy introduced Roscoe to appellant and advised the appellant that Roscoe wanted to buy some marihuana from him. A sale was accomplished outside the presence of McElroy. The next day Roscoe again asked McElroy to put him into contact with the appellant; and this resulted in two more sales of marihuana, again outside the presence of McElroy. Immediately thereafter appellant was apprehended and 3 bags of marihuana were found in his coat pocket.

Charges were not preferred until February 24, 1976. Meanwhile, McElroy was secretly transferred to a new duty station. Subsequently, counsel for the Government explained at trial that this move was prompted by Air Force policy "to protect the individual from possible harm which may come to him because of his activities in acting as an informant for the Government." *See* para. 3–26, AFR 39–11 (June 28, 1974); *see also* para. 3–26, AFR 39–11 (April 25, 1978).

On February 25, 1976, the day after he had been appointed to represent appellant, Captain Olsen, the area defense counsel, made a discovery request. Included were:

a. All reports, OSI or otherwise, in which Sgt. Jesse L. Killebrew is named as a suspect or discussed as a possible suspect, or any information developed which

---

1. The appellant was charged and convicted of 3 specifications of sale, one of use, and one of possession of marihuana with intent to distrib- .ute, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.

has relevancy, no matter how minimal, to these and any other allegations against Sgt. Killebrew.

b. All reports, OSI or otherwise, in which the person referred to as Warner McElroy, Jr., is mentioned by name or code as a suspect, source of information, witness or in any other capacity.

c. All documents, memorandums, or records of conversations pertaining to this case, whether prepared by investigators, commanders, the SPCM authority, or any other person.

d. The current address and phone numbers of all witnesses the government intends to call, or speculates that it might call.

e. The names of all government investigators who have participated or are presently participating in the investigation of the instant case.

f. Copies of all statements taken from all witnesses.

g. A written summary of each and every verbal statement of any and all witnesses not reduced to writing and furnished as requested in subparagraph "f" above.

h. Examination of and copies of all personal or business notes, memorandums, and writings prepared by investigators in said case which are not furnished pursuant to any other provisions of this letter.

\* \* \* \* \* \*

k. The military status of all witnesses, as to those presently in civilian status, I request the date of separation from the Air Force, the discharge provisions used to effect such discharge, and a summary of circumstances explaining any discharges for other than completion of the obligated term of service.

*l.* Examination and copies of all personnel and medical records of all potential witnesses whether they are presently in the Air Force or have been discharged at an earlier date.

\* \* \* \* \* \*

*o.* Any and all matter not specifically requested but which are relevant to said case.

Elsewhere in the request, defense counsel noted that he was already in possession of statements by Roscoe dated January 31 and February 1, a statement by McElroy dated February 2, 1976,[2] and certain other documents.

On February 26, 1976, trial counsel replied to the request for discovery and, *inter alia*, provided this information:

a. The OSI report of investigation pertaining to this case will be extracted, and the extract will be provided immediately upon its completion. No other reports naming Sergeant Killebrew as a suspect or possible suspect in any other matter are known to exist;

b. No OSI reports of investigation mentioning Airman Warner McElroy, Jr., as a suspect or possible suspect are known to exist. It is noted at this time that Airman McElroy will not be called as a witness for the prosecution;

c. All documents, memoranda, and records of conversations pertaining to this case which are known to exist and which now presently exist have been furnished to you prior to this date. You will be notified of any documents, memoranda, and records forwarded to me after this date, and will be provided copies of the same;

d. Current addresses of all witnesses to be called by the prosecution are listed on the charge sheet. . . . .

e. The following named government investigators participated in this case: [names of eight special agents were furnished];

f. Copies of all statements taken from witnesses have been previously provided;

g. Verbal statements not reduced to writing are not known to exist;

h. In response to your request for all "memorandums" (sic), the only memoran-

---

2. The statement by McElroy is not contained in the record of trial or allied papers and no information has been supplied as to its contents.

dum prepared by an investigator known to exist is a log sheet of the serial numbers and denominations of bills found on Sergeant Killebrew's person;

. *    *    *    *    *    *

k. No military witness to be called by the prosecution has an established date of separation, nor are discharge proceedings contemplated against any military witness.

On February 26, 1976, defense counsel addressed to trial counsel and the military judge a request for a postponement of the scheduled date of trial from March 3 to March 10 or later. Captain Olsen noted that he was in possession of written statements of Special Agent Roscoe, a written statement of Airman McElroy, two receipts for money, and a laboratory report; but, in support of his request for delay, he cited the need to interview various witnesses, "including the primary government witness" and "several defense witnesses."

On February 27, 1976, trial counsel wrote to the military judge that he did not concur in the request for delay. He stated:

The numerous witnesses referred to in the request are the AFOSI special agents who assisted the two primary agents, Mr. James C. Van Vactor and Mr. Allan D. Roscoe, in the various stages of the investigation. It is not anticipated that any of these individuals, other than Mr. Roscoe and Mr. Van Vactor, will be called as prosecution witnesses. Even if called, the testimony which the other agents would give would be, for the most part, cumulative to that which will be provided by Mr. Van Vactor and Mr. Roscoe. At most, the interviews of these other agents should take no more than a few hours of the defense counsel's time.

On February 27, 1976, the military judge postponed trial until March 10, 1976.

That same day Captain Olsen addressed to trial counsel and the military judge a request to interview McElroy, who had been listed as a witness on the charge sheet and had been mentioned in written statements of Special Agent Roscoe. While acknowledging that trial counsel had informed him that "the government no longer intends to call Amn McElroy," Captain Olsen maintained that "McElroy apparently has knowledge of the circumstances regarding all of the allegations." He added:

While the government through Captain Post has offered to place me in telephonic contact with Amn McElroy, I submit that this is unsatisfactory and unacceptable. As you are well aware, in a case involving drug allegations, the demeanor, appearance and manner in which a witness speaks is often a crucial factor regarding his credibility. Furthermore, I have never spoken with Amn McElroy and there would be no method of knowing the identification of the person with whom I was speaking if there was merely telephonic communication. I have sought through my interview with SA Van Vactor to obtain background information regarding Amn McElroy, to no avail. Finally, I have not been provided with any summaries or extracts of any reports of investigation that might assist me regarding favorable information that Amn McElroy may provide.

I am willing to travel at government expense to a place of their choice to interview Amn McElroy, or make arrangements for Amn McElroy to visit me in my office for purposes of an interview. However, I do not know the whereabouts of this potential witness and believe that a personal face-to-face interview with him is essential to preparation of the defense of Sgt. Killebrew.

Trial counsel's response to this request for a personal interview with McElroy stated:

At this time, the prosecution does not intend to call Airman Warner McElroy, Jr., as a witness in the case of *United States v. Killebrew*, despite the listing of Airman McElroy's name on the charge sheet. Since Captain Olsen has not yet taken action pursuant to paragraph 115, Manual for Courts-Martial, to request Airman McElroy as a defense witness, there is no authority for me as trial counsel to summon Airman McElroy to this

station. Obviously, I cannot authorize TDY travel for Captain Olsen to interview the individual.

It is noted that Captain Olsen has not even attempted to contact Airman McElroy telephonically, nor has he stated any reasons as to why a telephone interview is "unsatisfactory and unacceptable." Rather, it seems only reasonable that such an interview should be conducted prior to any decision to request Airman McElroy as a defense witness. I do not know of any provision in the Manual for Courts-Martial, or any case law decision, for that matter, which requires the prosecution to arrange for a "face to face interview" between the defense and any person who might be a "potential witness."

On March 11, 1976, trial counsel wrote to Captain Olsen that:

I do not intend to call Amn McElroy as a witness during the prosecution case in chief, despite the listing of his name on the charge sheet as a prosecution witness. Amn McElroy may be called as a rebuttal witness, but this decision will not be made until after presentation of the defense case. Due to threats which have been made against Amn McElroy by persons assigned to Minot AFB, and after consultation with the Commander, AFOSI, Det 13, I have decided not to summon Amn McElroy to this station until such time as his testimony as a rebuttal witness is needed.

Pursuant to a local rule of practice, the defense counsel notified trial counsel and the military judge on March 12, 1976, that when trial began [3] he intended "to move for dismissal because of failure of the government to properly disclose matters relevant to the trial of *United States v. Killebrew.*"

Through a motion to dismiss and various other motions during the trial, the defense counsel sought to capitalize on his requests for a personal interview with McElroy. For instance, at one point he asked the military judge to order the production of McElroy "so that I can travel to a location satisfactory to the Air Force Office of Special Investigation for purposes of a personal interview of Airman McElroy." He sought a continuance in the proceedings "in order to properly prepare Sergeant Killebrew's defense—provided that you grant my motion." To support his request, Captain Olsen urged that there was a "distinct possibility of an affirmative defense of entrapment. Therefore, Airman McElroy's participation as an informant in this case is crucial to any preparation of such a defense." He argued that denial of access to McElroy "is a denial of due process and it denies Sergeant Killebrew of his right to counsel and his right to present and prepare a defense."

At one point in the consideration of the defense motions, there was discussed a telephone call which defense counsel had received a few days prior to trial. The caller had identified himself as McElroy. When counsel had asked "McElroy" why he was in protective custody, the response was, "Because I've heard that people are out to get me." Queried whether anyone had ever threatened him directly, the caller had answered in the negative. Also on the line had been another person, who had claimed to be an OSI agent but did not specifically identify himself. Captain Olsen had asked "McElroy" whether Killebrew could listen on the telephone for a moment to identify the voice. However, since "McElroy" had refused to cooperate in this manner, Killebrew had not gotten on the telephone. When the defense counsel had asked "McElroy" about the alleged drug sales and the events leading thereto, the caller had refused to discuss these matters.

At trial Captain Olsen maintained that this telephone call had not constituted an adequate interview of McElroy, since he could not be sure that it was McElroy with whom he talked, nor could he observe the demeanor and appearance of the caller,

---

3. Apparently trial had been postponed again until March 16—the date on which it finally began.

whoever he was. When the military judge asked what purpose a face-to-face interview would serve if the caller had been McElroy, since the caller was unwilling to discuss the drug sales, defense counsel responded that then he could seek a court order for an interview.[4] Also, he suggested that a witness might be more willing to answer his questions in a personal interview than in a telephone call.

The military judge persisted in his rebuff of the defense efforts to obtain a personal interview with Airman McElroy. Likewise, he denied a motion by Captain Olsen to withdraw as defense counsel because under the circumstances he could not effectively represent the accused, and a motion for a mistrial based on a claimed denial of due process.

## I

■ Military law has long been more liberal than its civilian counterpart in disclosing the government's case to the accused and in granting discovery rights. For example, the names of prospective witnesses are listed on a charge sheet, which is served on the accused; in civil courts the names of prosecution witnesses often remain undisclosed. *See United States v. Webster*, 1 M.J. 216, 219 (C.M.A.1975); Fed.R.Crim.P. 16.

Moreover the Manual for Courts-Martial, United States, 1969 (Revised edition), contemplates that defense counsel will be permitted to interview prospective witnesses. Paragraph 42c states: "Counsel may properly interview any witness or prospective witness for the opposing side in any case without the consent of opposing counsel or the accused." Paragraph 44h directs that, "[b]efore trial, [the trial counsel] should advise the defense of the probable witnesses to be called by the prosecution." And paragraph 48h, which concerns preparation for trial by counsel for the accused, states, "Ample opportunity will be given the accused and his counsel to prepare the defense, including opportunities to interview each other and any other person."

Applying similar language in the 1951 Manual for Courts-Martial, this Court held invalid a military order which prohibited an accused from contacting witnesses concerned with the charges against him. *United States v. Aycock*, 15 U.S.C.M.A. 158, 35 C.M.R. 130 (1964). *Accord, United States v. Wysong*, 9 U.S.C.M.A. 249, 26 C.M.R. 29 (1958). Similarly, the Court disapproved a directive of the Air Force Office of Special Investigations which required that an OSI agent who was being interviewed before trial be accompanied by the appointed trial counsel or some other third person. *United States v. Enloe*, 15 U.S.C.M.A. 256, 35 C.M.R. 228 (1965). We announced that, "absent special circumstances, the right to a pretrial interview—guaranteed to [the defense] under the Manual [for Courts-Martial] and the Code—encompasses the right to an interview free from insistence by the Government upon the presence of its representative." *Id.* at 260, 35 C.M.R. at 232.

Viewed in light of these principles, the record of trial here reveals that the rights of the appellant were not adequately safeguarded. McElroy was clearly a potential witness for the prosecution. Even in his last communication to defense counsel, the trial counsel recognized that McElroy might be called by the Government as a rebuttal witness. As to the right to interview, the Manual draws no distinction between witnesses for the prosecution in the case-in-chief and rebuttal witnesses.

Furthermore, paragraph 48h includes opportunity to interview persons who may become defense witnesses or who have information that may be of importance in preparing a defense. McElroy's close relationship to appellant's drug sales gave rise to a substantial possibility that he might have information that would be of significance to the defense.

■ In some of the pretrial correspondence, trial counsel responded to Captain Olsen that, since McElroy had not been requested as a defense witness to testify at

---

4. Probably he was referring to a deposition.

trial, there was no authority for trial counsel to summon him back to Minot. However accurate this comment might have been under other circumstances, it does not apply when, as here, a witness has been transferred between the time of accused's apprehension and the preferal of charges and his whereabouts are thereafter concealed by the Government.

██ In the same response trial counsel referred to a lack of precedent for requiring the prosecution to arrange a personal interview with a "potential witness." While in the usual case trial counsel need not arrange for interviews of witnesses, a different burden exists when the Government has intentionally blocked access to a witness by secretly transferring him.

The situation was not rectified by the telephone call from the person who identified himself as "McElroy." In the first place, the identity of the caller was never adequately authenticated. In view of the rejection at the time of Captain Olsen's reasonable proposal that appellant be placed on the telephone to identify the voice of the caller as that of "McElroy"—and the absence of other evidence demonstrating that McElroy was, in fact, the caller—we cannot properly assume the identity of the caller. *See generally* Annot., 79 A.L.R.3d 79 (1977).

██ The person who called Captain Olsen and purported to be McElroy had declined to answer questions about drug sales. Whether or not the caller was McElroy, it is quite conceivable that in a personal interview with defense counsel McElroy might have declined to answer any questions.

Such conduct would have been entirely permissible; a witness may refuse to answer the questions of a defense counsel,[5] so long as the Government has not induced that refusal.[6]

One reason for the Court's insistence in *Enloe*[7] that defense counsel be allowed private interviews with witnesses was to provide a setting in which the witnesses would be more likely to answer the questions of defense counsel—and answer them truthfully. Indeed, one problem with a telephone interview is the difficulty of convincing a witness that no one else is overhearing his remarks—on a telephone extension or otherwise.

We acknowledge that the Government has a legitimate concern for the security of its sources of information. Thus, a privilege is recognized with respect to the identity of informers. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).[8] Even when, as here, the identity of an informant is known, there remains a need to protect him from retaliation, which would have a chilling effect on future sources of information. Having already avowed in *United States v. Cumberledge*, 6 M.J. 203, 205 (C.M.A.1979), that "[w]e are not unmindful of the potential problems existing as to the safety of these witnesses," the Court accepts the need for the Air Force's "threatened airman's program" and its counterparts in the other services.[9]

However, we also made clear in *Cumberledge* that the need to protect a witness or informer must be balanced against the defense's legitimate interest in meaningful access to evidence. Moreover, here, as in

---

5. *United States v. Rice*, 550 F.2d 1364 (5th Cir. 1977); *United States v. Scott*, 518 F.2d 261 (6th Cir. 1975); *United States v. White*, 454 F.2d 435 (7th Cir. 1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972).

6. *See United States v. Enloe*, 15 U.S.C.M.A. 256, 35 C.M.R. 228 (1965), and *United States v. King*, 368 F.Supp. 130 (M.D.Fla.1973), restricting prosecution involvement in the witness' decision.

7. In *Enloe* the Court recognized that exceptional circumstances may preclude providing defense counsel a private interview with a witness.

8. This privilege must sometimes give way to the interests of a defendant in having available at trial all the evidence bearing on guilt or innocence. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

9. The need for such programs may be especially great in connection with drug offenses where great emphasis has been placed on informers and where retaliation is reputedly a real danger.

*Cumberledge,* "it should be noted that the witnesses are being protected from actions by the accused or his cohorts, not the defense attorney, and it is, therefore, improper to deny the counsel the necessary avenues of discovery." [10]

■ One aid in achieving a balance between the competing needs of the Government and of the accused may be a protective order whereunder defense counsel is instructed not to reveal to his client certain information—such as the present whereabouts of the witness. If such an arrangement does not satisfy the witness' concern for his own safety, then it may be necessary to arrange a personal interview with defense counsel at some location which will not reveal the witness' present duty station. [11]

■ In the case at bar, we have ruled that, for several reasons, the telephone interview of defense counsel with "McElroy" was insufficient to protect the appellant's rights provided by the Manual for Courts-Martial. However, we recognize that in some instances a telephone conversation may be quite adequate for defense counsel to determine whether a potential witness has anything to contribute to a case. Also, the telephone conversation may demonstrate that—as is his right—the witness will not discuss the case with defense counsel. In that event, the defense counsel may wish to take the witness' deposition or have him subpoenaed as a witness at trial. [12]

■ Unlike the defense right to interview witnesses, which is unconditional, taking a deposition may be forbidden "for good cause." Article 49, Uniform Code of Military Justice, 10 U.S.C. § 849. Also, there are limitations on compelling the attendance of a witness at trial. Para. 115a, Manual, *supra.* However, when there is some reason to believe that a witness has knowledge relevant to criminal charges and he refuses to talk to defense counsel, there usually will be lacking any "good cause" to forbid his deposition or to refuse to compel his appearance at trial.

■ In the case at bar, Captain Olsen, the defense counsel, offered to travel anywhere at government expense in order personally to interview McElroy. In upholding the defense right to interview witnesses, we are not ruling that defense counsel or potential witnesses must be transported long distances at government expense for purposes of interview. The Manual provisions as to the interview of witnesses do not go that far. Instead, in cases where witnesses have been transferred routinely and are no longer available for personal interview at the place where the trial is to take place, defense counsel may have to resort to other expedients, such as telephone interviews, written questions, or requests that associate defense counsel be detailed to interview the witnesses wherever they are located. Under the Air Force system of area defense counsel, trial defense counsel can solicit assistance from the area defense counsel at the installation to which a witness has been transferred.

Here, however, the government's actions in concealing McElroy's location precluded the use of whatever interview alternatives that might otherwise have been employed. This was error.

## II

After ruling in *Cumberledge* that the Government had not provided adequate ac-

---

10. *Id.* at 205, n. 13. There the reference was to discovery by means of depositions taken pursuant to Article 49, UCMJ, 10 U.S.C. § 849; the comment is equally applicable to the right of interviewing potential witnesses guaranteed by the Manual.

11. In the unusual case where a witness' appearance also has been altered to protect him from retaliation, other safeguards—such as use of a mask—would be permissible.

12. If, after being subpoenaed, the prospective witness is still unwilling to talk to defense counsel, then defense counsel may have the difficult choice between abandoning the witness' testimony or calling him as a defense witness without knowing exactly what he will say on the stand. If the witness is called, leading questions and impeachment may be permissible. *Cf.* paras. 149c(1) and 153b(1), Manual for Courts-Martial, United States, 1969 (Revised edition).

cess for defense counsel to certain witnesses, we held that the error had not been prejudical. In the case at bar, however, McElroy's pretrial statement which was furnished to defense counsel is not in the record, so we do not know what information he possessed.

In one of his motions at trial, Captain Olsen mentioned entrapment. Although at trial he offered no evidence of entrapment and its existence is unlikely from anything that appears of record, we cannot state conclusively that a defense of entrapment could not legitimately have been raised on the basis of information available from McElroy. Trial counsel assured the military judge and defense counsel that if he were aware of evidence favorable to the defense, he would make it known to defense counsel. *See* para. 44*g*(1), Manual, *supra; Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Presumably, evidence of entrapment would have been within the ambit of this commitment on trial counsel's part. Nonetheless, we cannot take as conclusive the prosecutor's representation about the nonexistence of favorable evidence for the accused. However well-intentioned, prosecutors are at a disadvantage in determining what evidence will aid an accused's cause.

Since, from this record, we can only speculate as to what information was available from McElroy and to what use it might have been put, we cannot at present exclude the risk of prejudice to appellant; neither can we affirmatively conclude on the record that prejudice did result.[13] Therefore, we conclude that a limited hearing is appropriate to determine what information McElroy might have provided if defense counsel had been granted meaningful access to him.[14] *See United States v. Du-Bay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967); *United States v. Kitchen*, 448 F.2d

572 (8th Cir. 1973); *United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973).

The decision of the United States Air Force Court of Military Review is vacated. The record is remanded to the Judge Advocate General for transmission to an appropriate general court-martial convening authority who either will refer the record to a general court-martial for a limited hearing on the matter discussed above or, if he believes such a limited hearing is impracticable, will, in the alternative, dismiss the charges. If a general court-martial is convened, the military judge thereat, under the provisions of Article 39(a), UCMJ, 10 U.S.C. § 839(a), will conduct the limited hearing hereby ordered. At the conclusion of the proceedings, he will enter findings of fact and conclusions of law and terminate the hearing. The record and verbatim transcript of the hearing is to be returned directly to this Court.

Judge FLETCHER concurs.

COOK, Judge (dissenting):

In my judgment the majority misapprehend and misapply the rules of law applicable to the right of a party to interview a witness before trial. In the federal civilian criminal courts the Government is not required to disclose the names of its witnesses,[1] and the rules make "no provision for the granting of an order requiring the Government witness to submit to an interview before trial." 3 Orfield, Criminal Procedure under the Federal Rules, sec. 26:147 (1966). The courts in some states have, for varying reasons, ordered that an interview be allowed of persons under their jurisdiction, but they, too, "will not ordinarily order an unwilling witness to submit to an interview." Hagan, *Interviewing Witnesses in Criminal Cases*, 28 Brooklyn L.Rev. 207, 225 (1962). Military law is much more generous than the civilian law in this area, but the

---

**13.** Under other circumstances, dismissal of the charges or a rehearing might be an appropriate remedy at this stage.

**14.** Appellate government counsel have advised the Court that they believe McElroy can be located.

**1.** *Soper v. United States*, 220 F.2d 158, 159–60, 15 Alaska 475 (9th Cir. 1955), *cert. denied*, 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739 (1955).

accused did not use the means open to him, which alone justifies denial of any relief to him on this appeal. *State v. Clark*, 125 Kan. 791, 266 P. 37 (1928). In any event, in my opinion, there was no error and no possibility of prejudice to the accused.

Unlike the civilian law, military law grants the accused the right to compel any person to submit to pretrial inquiry. The right to compel presence and require response outside the courtroom, however, exists only in the following situations, none of which is involved in this case:

(a) At a hearing conducted by an investigating officer under Article 32. There was no Article 32 hearing here.

(b) For a disposition, as provided by Article 49, Uniform Code of Military Justice, 10 U.S.C. sec. 849. The accused made no request before trial, or at trial, to depose McElroy as a witness.

(c) As to a person appearing at trial as a witness, who was not previously interviewed and whose probably testimony is not known, the accused has the right to a suitable continuance to enable him to question the witness before he testifies. *See United States v. Ledbetter*, 2 M.J. 37, 52 (C.M.A. 1976)(Cook, J., concurring in part and dissenting in part).

Two cases, *United States v. Iturralde-Aponte*, 1 M.J. 196 (C.M.A.1975) and *United States v. Enloe*, 15 U.S.C.M.A. 256, 35 C.M.R. 228 (1965), bear on the issue before us. Neither case held that a person available to be interviewed in advance of testifying at trial could not refuse to be questioned when outside the courtroom. In *Iturralde-Aponte*, the question was the denial of a request for the attendance of a witness for trial, as provided by Article 46, UCMJ, 10 U.S.C. sec. 846; consequently, that case does not involve the right to interview a witness outside the courtroom. In the *Enloe* case, the Court held that it was improper to prevent the accused from interviewing a witness without the presence of trial counsel. The Court expressly noted it was "not confronted with the problem whether any court or officer has the authority to compel any witness, as an individual, to submit to a pretrial interview." *Id.* at 261–62, 35 C.M.R. at 233–34. As to that problem, it cited a number of cases, including *Dicks v. United States*, 253 F.2d 713 (5th Cir. 1958). *Dicks* held "there was no error in denying defendant's request to the [trial] court to compel named witnesses to talk with appellant's counsel before he put them on the stand." *Id.* at 715.

Earlier, I observed that no rule exists in the federal or state courts under which a witness can, before trial, be compelled to submit to questioning by defense counsel. At trial, trial counsel alluded to that circumstance and questioned whether the military judge could order McElroy, who was in protective custody because he had "heard that people . . . [were] out to get" him, to submit to examination by defense counsel outside the courtroom. Defense counsel conceded McElroy told him in a telephone conversation that he "would not discuss" various matters as to which defense counsel wanted to question him.[2] That McElroy declared his refusal to be examined in a telephone conversation with counsel did not make it any the less a refusal. In my dissent in *United States v. Johnson*, 4 M.J. 92 (C.M.A.1977), I pointed out that a "communication . . . by telephone is as consequential as communication in person." I believe McElroy's telephonic declaration constituted sufficient notice to defense counsel of his unwillingness to be questioned by him outside the courtroom.

I know of no rule of law or judicial policy that requires a witness' refusal to be questioned by counsel to a party to be made only in a face-to-face meeting with counsel.

2. Although defense counsel purported not to know that the person to whom he spoke was McElroy, there is substantial evidence from which the trial judge could properly find that the person who spoke to defense counsel was, in fact, McElroy.

I know of no sound reason to impose such a requirement upon the witness, especially one who is, as McElroy was, at a place removed from the place of trial.[3]

The accused had means to compel McElroy to appear and submit to examination. Trial counsel represented, and defense counsel did not deny, that the defense never made any request for McElroy's production as a witness. More importantly, defense counsel admitted trial counsel had told him that if he would "'just request Airman McElroy as a witness, then that will solve the problem,'" because "McElroy would be provided." Nevertheless, defense counsel rejected that course; he said he did so because he believed it would be improper to request as a witness a person who had said "he wouldn't answer any questions." Under no view of the record does it appear that the accused asserted the right to avail himself of any of the means provided by law to require McElroy to submit to questioning by defense counsel in preparation for possible cross-examination of McElroy as a potential government witness.[4]

Two other aspects of the defense arguments at trial in regard to McElroy require mention. The principal thrust of the defense contentions was that McElroy was an adverse witness, and the denial of a face-to-face interview with him amounted to a denial of "the right of confrontation." As McElroy did not appear as a government witness, this aspect of the defense claim is patently without merit. Secondarily, McElroy was described as a witness who could contribute to a possible defense of entrap-

ment. This contention also has a double aspect.

First, the defense contended generally that the Government had received information from McElroy that might be favorable to the accused's defense. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The nature of the allegedly favorable matter was never disclosed. All the evidence is to the effect that there was no such favorable material. The Government had turned over to defense counsel a copy of a statement McElroy had made to OSI agents and extracts of other agency material on McElroy; trial counsel represented, without challenge by defense counsel, that all material that had come to his attention was not "exculpatory," and that if he had such material he would have immediately released it to defense counsel; and finally, although disclaiming certitude, defense counsel admitted he had "an idea" of what McElroy might testify to if he were called as a witness. In light of these circumstances, the *Brady* aspect of the accused's contention has no merit.

The contention that McElroy could contribute to a defense of entrapment as a defense witness is equally without merit. The information defense counsel wanted from McElroy, which he deemed "crucial" to the defense of entrapment, was whether McElroy had "provided information in the past for money . . . [and whether he] had been paid," for what defense counsel described as "this setup" of the accused.[5] Several times, the trial judge commented on the "irrelevance" of affirmative answers

---

3. As noted earlier in the text, McElroy was in "protective custody." As a protective measure, he had been formally transferred to another station.

4. Standing alone, some language in one of the numerous shifting arguments of defense counsel might be capable of being construed as a request to depose McElroy. However, in context of the immediate argument, and the other arguments on different aspects of the general attempt to obtain an interview with McElroy, what emerges is not ineptness of language, but a substantive declaration that the defense did

not want a meeting with McElroy that would require the presence of trial counsel; he desired only a meeting "alone" with McElroy so he could "probe perhaps in a less adversary manner." Consequently, the issue is solely whether an accused is entitled to a face-to-face interview with a witness, even if the witness has informed him he does not wish to be questioned on matters of interest to the defense.

5. McElroy had introduced an undercover agent to the accused, but he was not a witness to any of the three subsequent transactions between the agent and the accused.

to these questions to a possible defense of entrapment. I agree with his assessment of the information sought by counsel. In any event, if the accused wanted McElroy as a defense witness at trial, he could have asked for him. He did not. I cannot transmute his inaction into error on the part of the trial judge.

The record completely establishes accused's guilt of the offenses charged, and discloses no error to justify setting aside the conviction. I would affirm the decision of the Court of Military Review.